[S. F. No. 10217. In Bank.—March 13, 1924.]

## LAVINIA J. HOTALING et al., Respondents, v. RICHARD M. HOTALING et al., Appellants.

[1] CORPORATIONS—ABSENCE OF QUORUM OF DIRECTORS—VALIDITY OF DEED TO CORPORATE PROPERTY — INTEREST.—A deed of corporate property to a director executed pursuant to an authorization of the board of directors adopted at a meeting at which three directors, including the grantee in the deed, were present, was invalid, where the board of directors, as provided for in the by-laws, consisted of five members, and according to the by-laws and under the state law, a majority of the board, or three or more, were necessary to form a quorum or to perform a valid corporate act. The grantee being personally interested in the transaction adversely to the corporation he was disqualified thereby to vote the authorization, and his presence could not be counted to make a quorum for that purpose.

[2] ID.—CANCELLATION OF DEED—QUIETING TITLE—QUORUM OF DIRECTORS—PRESUMPTION—FINDINGS—EVIDENCE.—In an action for the cancellation of the deed in question and to quiet title to the property covered thereby, the presumption that there was a fourth director present at the meeting at which the execution of the deed was authorized cannot be indulged in in view of a finding, supported by sufficient evidence, to the contrary.

[3] ID.—EXECUTION OF DEED—POWER OF STOCKHOLDERS TO AUTHORIZE.—If the meeting at which the execution of the deed in question was authorized be regarded as a meeting of stockholders, it was wholly incompetent to authorize a corporate act of that character.

----

1. What constitutes a quorum, notes, 21 **L. R. A.** 174; 42 **L. R. A. (N. S.)** 799.

[4] ID.—SUBSEQUENT ANNUAL MEETING OF STOCKHOLDERS—EFFECT OF RECITAL IN MINUTES OF—RATIFICATION.—The deed in question was not validated by a purported ratification thereof at the subsequent annual meeting of the stockholders, at which time the minutes recited that "The minutes of the last stockholders' meeting were read, and on motion, duly seconded, adopted," since the recital does not purport to approve anything which had been done by the directors, the only body competent to act in the premises; and, furthermore, the stockholders as such were incompetent to ratify that which they could not authorize.

[5] ID. — SUBSEQUENT RESOLUTIONS OF BOARD OF DIRECTORS — CONSTRUCTION OF—INTENT.—Where subsequent to the execution of the deed in question, a deed covering the same property to a different grantee was executed pursuant to authorization by the board of directors, and at a meeting of such board following the execution of the latter deed, a resolution was passed approving the acts of the officers of the corporation in executing certain instruments, including the latter deed, and immediately following this resolution an "omnibus resolution" was passed approving and confirming all the acts and transactions of the officers of the corporation within the scope of which the deed in controversy would fall, the *"omnibus* resolution" cannot be construed as ratifying and therefore validating the deed in dispute, where there was nothing to indicate that the directors present at said meeting had in mind the latter deed or the resolution purporting to authorize it, the intent of the directors to ratify the deed to the different grantee being shown by the specific resolution preceding the *omnibus* resolution.

[6] ID. — RESOLUTIONS — CONSTRUCTION — INFERENCES — EVIDENCE —APPEAL.—In such action involving the cancellation of an invalid deed, giving the construction contended for by defendants to the *"omnibus* resolution," namely, that it ratified the deed in question, and reading that together with the specific resolution, ratifying the execution of the subsequent deed, the most that can be said is that an ambiguity resulted as to which of the two deeds the board of directors intended to ratify, which was resolved by the trial court against the defendants; and where two conflicting inferences are fairly deducible from the evidence, the one which supports the judgment must be accepted on appeal.

[7] ID.—ULTRA VIRES—AGENCY.—The authorization by a board of directors without a legal quorum to execute a deed does not present a question of *ultra vires,* but of agents assuming to act in behalf of a corporate principal in a matter in which they lacked authority to bind the principal.

[8] ID. — QUORUM OF DIRECTORS — STOCKHOLDERS' MEETING — OWNERSHIP OF STOCK.—Assuming the soundness of the rule invoked by

193 Cal.—24

defendants in such action that a legal quorum of directors is such as is approved at a stockholders' meeting by stockholders holding all or substantially all of the capital stock, application of such rule cannot be made where stockholders holding all or substantially all of the capital stock were not present at joint stockholders' and directors' meeting.

[9] DEEDS — ESCROW — DELIVERY. — The validity of the rule, that a grant cannot be held in escrow by the grantee, and that there can be no such thing as a delivery of a grant to the grantee conditionally, is not open to question, but it comes into application only when there has been a delivery.

[10] ID.—TITLE—DELIVERY—INTENT—QUESTION OF FACT.—It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended to divest himself of title; if he did, there was an effective delivery of the deed; if not, there was no delivery. The solution of this question is grounded entirely upon the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question.

[11] ID. — MISTAKEN BELIEF AS TO VALIDITY OF DEED — EFFECT OF MANUAL TRADITION AND POSSESSION.—Where grantors, in handing a deed to the grantee, or in permitting him to retain possession thereof after its signature and acknowledgment by them, believed that the deed would be of no effect whatever until recorded, there was no intent to transfer title by such acts, for under that belief the manual tradition of the deed would be but one step, and not the final step, in the process of the execution, and under that belief tradition without recordation would be no more effective than would signature without delivery.

[12] ID. — KNOWLEDGE ON PART OF GRANTEE OF BELIEF — TRUSTS. — Where such grantee at all times was aware of the belief in the minds of the grantors, that a deed to real property had no validity or effect unless and until it was recorded, if it be assumed that such grantee did not share this belief, he would have to be regarded as a trustee dealing with his *cestuis que trust*, who would not be permitted to take advantage of their ignorance and mistake to procure a benefit for himself; and if such an advantage were taken under such circumstances the conveyance would be voidable at their option.

[13] CORPORATIONS — INVALID DEED — CANCELLATION — ESTOPPEL—EFFECT OF MISTAKEN BELIEF AS TO VALIDITY OF DEED—RESOLUTIONS. Where two directors of a corporation, in which practically all the

stock was owned by four directors, consented to the execution of a deed of the corporate property to another of the directors, but under the mistaken belief that the deed would have no validity until and unless recorded, in view of this belief the grantee is in no position to claim that said two directors, by consenting to the execution of the deed, are estopped from maintaining an action for the cancellation of such deed, whether it be assumed that the grantee was aware of their mistake or that he shared in it; nor did subsequent resolutions by the board of directors, in view of such belief, have the effect of ratifying said deed.

[14] APPEAL—FINDINGS—JUDGMENT—CONSTRUCTION.—It is the duty of an appellate court in reviewing the findings to give them a liberal construction so as to uphold rather than defeat the judgment; all the findings are to be read together and must be reconciled to prevent any conflict upon material points, if such reconciliation is possible.

[15] CORPORATIONS—CANCELLATION OF DEED—QUIETING TITLE—FINDINGS—JUDGMENT.—In this action for the cancellation of a deed and to quiet title to the property covered thereby, the findings in response to the first and second causes of action afford ample support to the judgment in favor of plaintiffs.

APPEAL from a judgment of the Superior Court of Marin County. Edward I. Butler, Judge. Affirmed.

The facts are stated in the opinion of the court.

John W. Preston, Robert Duncan, Peter F. Dunne, E. J. McCutchen, W. H. Metson and Thos. P. Boyd for Appellants.

Gavin McNab, Nat Schmulowitz and R. P. Henshall for Respondents.

MYERS, J.—Plaintiffs, as stockholders and as directors, respectively, of the defendant corporation, The Hotaling Estate Company, brought this action in behalf of said corporation to establish the title of said corporation to certain premises in Marin County, known as the Sleepy Hollow Ranch. Findings and judgment in the court below were in favor of the plaintiffs and the defendants have appealed. An adequate discussion of the respective contentions of the parties requires a somewhat extended statement of facts. In the preparation of the following statement and in reviewing the evidence for that purpose we have followed the rule

which governs reviewing courts in considering the evidence on appeal, that all intendments are in support of the judgment. In cases of conflicting evidence we have accepted as true that which tends to support the judgment in so far as it is not inconsistent with the findings, and where conflicting inferences are fairly deducible from facts proved we have adopted those which tend to support and harmonize with the judgment herein.

In 1897 A. P. Hotaling, a man of large means, who was engaged in the wholesale liquor business in San Francisco, caused to be organized a corporation, A. P. Hotaling & Company, to which he transferred all of his property and assets. Of its capital stock one share was issued to Julius Friedland as a qualifying director's share, and the remainder was divided in four equal parts, which were issued, respectively, to Lavinia J. Hotaling, his wife, plaintiff herein, and to their three sons, A. P. Hotaling, Junior, now deceased, Richard M. Hotaling, defendant herein, and Frederick C. Hotaling, plaintiff herein. In the interest of brevity the parties hereto will be hereinafter referred to by their respective first names. In 1898, by reason of the failing condition of health of both A. P., Senior, and A. P., Junior, Richard became the general manager of the corporation. A. P., Junior, died in 1899, and his widow, Ella K. Hotaling, defendant herein, succeeded to his stock ownership and interest in the corporation. A. P., Senior, died in 1900. The relation between Richard and his mother and younger brother Frederick in the year 1898 and for many years subsequent thereto was one of great trust and confidence, resting not alone upon the filial and fraternal relationship, but also upon the circumstance that he was in fact and in effect the manager of the corporation, in which was vested substantially all of the property and assets of the several members of the family.

The minute-book of the corporation discloses that on July 10, 1899, "at the regular annual meeting of the stockholders and directors of A. P. Hotaling & Co. (all having been previously notified), . . . the meeting being a joint one of directors and stockholders by reason of all of the stock in the Company being represented or controlled by the directors. There were present R. M. Hotaling, Vice-President and Treasurer, F. C. Hotaling, Secretary, and Mrs. L. J. Hotal-

ing.  After the reading and adoption of the minutes of the previous meeting, the Vice-President and Treasurer read his report for the past year's business, which report was adopted as read and ordered filed for reference.  The election of directors and officers to serve for the coming year, 1899 to 1900, resulted as follows: Directors, L. J. Hotaling, R. M. Hotaling, F. C. Hotaling, Julius Friedland and A. P. Hotaling.  Officers, L. J. Hotaling, President, R. M. Hotaling, Vice-President, Treasurer and General Manager, F. C. Hotaling, Secretary.  By resolution, duly seconded, the President and Secretary were authorized to execute a deed conveying to R. M. Hotaling all that land hitherto known as the Austin-Dutton Ranch in Marin County, Calif. [the Sleepy Hollow Ranch] for $10—Ten Dollars—and other good and valuable consideration in recognition of his services to the company, and furthermore to equalize his patrimony in comparison with certain gifts made to his brother, the late A. P. Hotaling, Jr., by their father, A. P. Hotaling, Sr., . . ." Thereafter, on September 7th following, Lavinia and Frederick, as president and secretary, respectively, signed and acknowledged a deed purporting to convey said Sleepy Hollow Ranch to Richard.  There was a manual tradition of the deed to Richard at that time, and it has ever since remained in his possession, but was not recorded until October 18, 1916.  The questions of the validity and effect of this deed form the subject matter of this controversy.

The evidence indicates, and the court so found, that at all the times here in question Lavinia and Frederick believed and understood that a deed to real property had no validity or effect unless and until it was recorded.  It is equally indicated by the evidence, though not expressly so found, that Richard and Ella entertained the same belief and understanding.  It is expressly found that Richard was at all times aware of this belief and understanding in the minds of Lavinia and Frederick.  The motive and purpose of this transaction are not entirely clear, but the evidence indicates that the members of the Hotaling family were apprehensive that Ella would remarry and thus bring into the family a stranger who might not be acceptable to the Hotalings, and with this possibility in view it was proposed by Richard to provide a means by which, in the event of

such remarriage, the Sleepy Hollow Ranch could be taken out from the assets of the corporation and reserved for the exclusive use and enjoyment of the Hotalings. Richard promised and agreed to hold said deed for the use and benefit of Lavinia, Frederick, Ella, and himself, and not to record same except in the event of Ella's remarriage.

Thereafter all of the parties continued to treat the Sleepy Hollow Ranch in all respects as if it still belonged to the corporation. It continued to be carried upon the corporate books as a portion of the corporate assets. It appeared upon each of the annual financial statements of the corporation as one of its assets. It continued to be assessed in the name of the corporation for purposes of taxation, and the fire insurance thereon was carried in the name of the corporation. During the ensuing five years the corporation expended in taxes, insurance, maintenance, and improvements upon this property about $98,000. These expenditures were not charged to Richard, but were entered upon the corporate books as corporate expenditures upon its own property. During all of this time the corporation continued in possession and control of this property, and Richard continued in the actual management and active control of the affairs of the corporation. Lavinia was nominally president and Frederick nominally the secretary thereof, but they were such in name only, and exercised the functions of their offices only when called upon to do so by Richard, and then in accordance with his suggestions and advice. They were inexperienced in business affairs and at all times trusted and confided implicitly in him, and continued to so trust and confide until shortly before the commencement of this suit.

In December, 1904, it was decided to separate the liquor business from the other properties and business of the family, and to that end The Hotaling Estate Company, defendant herein, was incorporated. To the latter corporation was transferred all of the properties and assets of A. P. Hotaling & Company other than those which pertained directly to the liquor business. In return therefor the Estate Company assumed certain indebtedness and issued its capital stock in the same proportions and to the same persons who held the shares of A. P. Hotaling & Company. Instruments of conveyance were prepared, executed, ac-

knowledged, delivered, and recorded under the direction and supervision of Richard, conveying the various properties from A. P. Hotaling & Company to the Hotaling Estate Company. Among these was a grant, bargain, and sale deed purporting to convey the Sleepy Hollow Ranch—the property here in question. That deed was executed, acknowledged, and delivered by Richard as vice-president of A. P. Hotaling & Company, and was promptly recorded. Richard alleges in his answer and contended at the trial that it was not the intention of any of the parties that a conveyance should be made of the Sleepy Hollow Ranch from A. P. Hotaling & Company to the Hotaling Estate Company. He claimed that the preparation and execution of that deed was wholly due to mistake and inadvertence. The trial court found against him upon this contention, however, and found that the preparation and execution of this deed was not inadvertent, but was in accordance with the intention of all of the parties. The officers and directors of The Hotaling Estate Company were the same individuals, occupying the same relationships, as in A. P. Hotaling & Company. Thereafter, and until 1916, all of the parties continued to treat the Sleepy Hollow Ranch as the property of the Estate Company. It was entered upon the corporate books of the latter as one of its assets, shown as such in each annual financial statement, was so listed for purposes of taxation and for purposes of insurance, and the Estate Company continued in possession of said property and expended thereon in taxes, insurance, maintenance, and improvements about $8,000. These expenditures were not charged to Richard, but were entered upon the corporate books as corporate expenditures as upon property of the corporation. With respect to the expenditures of these large sums of money by the two corporations upon this property after the purported conveyance thereof to Richard, he presented two inconsistent explanations at the trial. He contended, first, that the corporation A. P. Hotaling & Company had agreed to expend this money upon the property for his benefit in consideration of past services by him rendered. He contended, second, that the expenditures were made for his personal account, and that the omission to charge the same against him upon the corporate books was an oversight. Both of these contentions were resolved against him by the

trial court, and the evidence amply supports its conclusions thereon.

In 1916 Richard recorded his deed, but plaintiffs had no knowledge of that fact until their attention was directed thereto by the omission of the Sleepy Hollow Ranch from the list of corporate assets in the financial statement of 1917. They then made an investigation which resulted, after some unsuccessful negotiations with Richard directed to the relinquishment of the property, in the commencement of this action. The action was brought by plaintiffs in behalf of and for the benefit of the corporation by reason of the fact that there are but four directors, who are divided two and two upon this question, and therefore no corporate action could be taken in the premises. The complaint is in three counts. The first contains the conventional allegations of the ordinary suit to quiet title. The second alleges at length and in considerable detail the facts above outlined and aims at the cancellation of the deed. The third re-alleges the same facts, together with additional facts whereby it is claimed that as against the defendant corporation Richard is estopped to assert any claim to this property. The defendants Richard, Ella, and The Hotaling Estate Company filed separate answers and are prosecuting separate appeals from the judgment.

[1] Regarding the corporation as a separate legal entity and the deed under which Richard claims as an attempted corporate act, it must, we think, be conceded to have been invalid, at least in its inception, for the reason that its execution was never effectively authorized by the board of directors of the corporation, in whom was vested the sole power to give such authorization. (Civ. Code, sec. 305; *Gashwiler* v. *Willis*, 33 Cal. 11 [91 Am. Dec. 607].) The board of directors, as provided for in the by-laws, consisted of five members. Under the by-laws and under the state law, a majority of the board of directors, or three or more, were necessary to form a quorum or to perform a valid corporate act (Civ. Code, sec. 308), even though there was a vacancy in the board. (*Porter* v. *Lassen County etc. Co.*, 127 Cal. 261, 269 [59 Pac. 563]; *Pennington* v. *Pennington Sons*, 27 Cal. App. 57 [148 Pac. 947]; 3 Cook on Corporations, 7th ed., sec. 713a, p. 2462.) At the meeting at which the resolution was adopted which purported to authorize the

execution of this deed there were but three directors present, including Richard, who was named therein as grantee. Being personally interested in this transaction adversely to the corporation he was disqualified thereby to vote the authorization, and his presence could not be counted to make a quorum for that purpose. (*Smith* v. *Immigration Assn.,* 78 Cal. 289 [12 Am. St. Rep. 53, 20 Pac. 677] ; *Wickersham* v. *Crittenden,* 93 Cal. 17, 32 [28 Pac. 788] ; *Curtin* v. *Salmon etc. Co.,* 130 Cal. 345, 349 [80 Am. St. Rep. 132, 62 Pac. 552] ; *Bassett* v. *Fairchild,* 132 Cal. 637, 647 [52 L. R. A. 611, 64 Pac. 1082] ; *Goodell* v. *Verdugo etc. Co.,* 138 Cal. 308 [71 Pac. 354] ; *DeMoulin* v. *Magnesite etc. Co.,* 186 Cal. 128, 132 [199 Pac. 42] ; *Lowe* v. *Los Angeles etc. Co.,* 24 Cal. App. 367, 374 [141 Pac. 399].) **[2]** Appellants contend that it should be presumed that there was a fourth director present at this meeting. The trial court found to the contrary and there was evidence to support this finding, both in the minute-book of the corporation (*Lowe* v. *Los Angeles etc. Co., supra*), and in the testimony of witnesses. The finding is, therefore, conclusive upon this point. We conclude that if the meeting of July 10, 1899, be regarded as a meeting of the board of directors there was not present a quorum of said board capable of authorizing the execution of this deed. **[3]** If, upon the other hand, it be regarded as a meeting of stockholders, it was wholly incompetent to authorize a corporate act of this character. (*Gashwiler* v. *Willis, supra; Blood* v. *La Serena L. & W. Co.,* 113 Cal. 221, 226 [41 Pac. 1017, 45 Pac. 252] ; *Salfield* v. *Sutter Co. L. I. & R. Co.,* 94 Cal. 546 [29 Pac. 1105] ; *In re Solidarite M. B. Assn.,* 68 Cal. 392 [9 Pac. 453].)

**[4]** It is suggested that the transaction, though invalid in its inception, was validated by a ratification thereof at the annual meeting of the stockholders of the corporation on July 9, 1900, at which time the minutes recited that "The minutes of the last *Stockholders'* meeting were read, and on motion, duly seconded, adopted." (Italics added.) The answer to this is twofold. First, the recital does not purport to approve anything which had been done by the *directors,* the only body competent to act in the premises; and, second, the *stockholders* as such were incompetent to ratify that which they could not authorize. (*Curtin* v.

*Salmon etc. Co., supra,* at p. 351; *Bassett* v. *Fairchild, supra.*)

It is next suggested on the part of appellants that the execution of the deed in question was ratified by a resolution adopted at a meeting of the directors on January 6, 1905, at which all of the directors were present. On December 6, 1904, at a meeting of the board of directors a resolution had been adopted authorizing the transfer and conveyance to The Hotaling Estate Company of "all the real estate now held or owned by this A. P. Hotaling & Company . . . ," and authorizing the president and secretary thereof to execute the necessary instruments of conveyance of said real estate. Subsequently, and on January 6, 1905, another meeting of the board of directors of A. P. Hotaling & Company was held and a detailed report was made to the meeting, describing the various conveyances which had been executed by the vice-president and secretary of A. P. Hotaling & Company under and pursuant to the resolution last referred to. In this report was a specific reference to the deed purporting to convey the Sleepy Hollow Ranch from A. P. Hotaling & Company to The Hotaling Estate Company. Based upon this report a resolution was adopted reciting in its preamble the execution of the various deeds, specifically mentioning the deed of the Sleepy Hollow Ranch, and resolving "that this corporation do and it does hereby ratify, confirm and approve all and singular the acts of its vice-president and secretary in executing the deeds, written assignments and bill of sale which they have executed as herein recited."

At the same meeting and immediately following the adoption of the resolution last referred to the board of directors adopted a resolution in the following terms:

"Resolved, that all and singular the acts and transactions of the President, Vice-President and Secretary of this corporation since the first directors' meeting of this corporation, which was held on the 13th day of August, 1897, to the date hereof, all of which transactions are known to us, be, and they are hereby ratified, approved and confirmed as the acts of this corporation."

[5] It is appellants' contention that this *"omnibus* resolution" must be construed as ratifying and, therefore, validating the purported deed to Richard which had been

made in 1899.  There are various reasons why we cannot adopt this view.  There is nothing, either in the minutes or in the evidence, to indicate that the directors present at this meeting had in mind the purported deed to Richard or the resolution purporting to authorize it.  It must be conceded that the *"omnibus* resolution" is sufficiently broad in its terms to be construed as referring thereto.  But so construed it would apply equally to the deed which had just been executed from A. P. Hotaling & Company to the Hotaling Estate Company.  The two deeds are, of course, inconsistent.  The latter was a grant, bargain, and sale deed, executed upon a valuable consideration, and therefore carried with it a covenant that the grantor had not previously conveyed the same estate or any interest therein to any person other than the grantee.  (Civ. Code, sec. 1113.)  If it be assumed that by the *"omnibus* resolution" it was intended to ratify the deed to Richard, the result would be that the covenants of the deed to the Estate Company were breached as soon as it was executed.  The grantor would then be liable in damages amounting to the full value of the property.  It is true that the stock ownership was at that time the same in both corporations, but that situation might change at any time thereafter.  It seems unthinkable that the directors present at that meeting had the intention of ratifying at the same time two different conveyances of the same land to different grantees.  It is clear that they did intend to ratify the later deed because they had just done so by a specific resolution which referred thereto in express terms.  The ultimate question in this connection is the question of the intent of the directors in adopting these two resolutions.  [6] Giving the construction contended for by appellants to the *"omnibus* resolution" and reading that together with the specific resolution, the most that can be said is that an ambiguity resulted as to which of the two deeds they intended to ratify, which was resolved by the trial court against the appellants.  Where two conflicting inferences are fairly deducible from the evidence, we must accept upon appeal that one which supports the judgment. (*Mah See* v. *North American Acc. Ins. Co.,* 190 Cal. 421 [26 A. L. R. 123, 213 Pac. 42].)  We conclude, therefore, that the purported deed to Richard was never ratified by the directors of A. P. Hotaling & Company acting as such.

It is suggested that the doctrine of *ultra vires,* as applied to a private corporation, and particularly as applied to a close corporation, as in the present case, should be confined within narrow bounds. [7] This is not a question of *ultra vires,* but of agents assuming to act in behalf of a corporate principal in a matter in which they lacked authority to bind the principal. [8] It is also suggested that a legal quorum of directors is such as is approved at a stockholders' meeting by stockholders holding all or substantially all of the capital stock, and that, therefore, the minutes of the joint meeting of July 10, 1899, must be taken as showing the unanimous consent of the stockholders to a modification of the by-laws, so as to make a majority of the directors present a legal quorum for the purposes of that meeting. Assuming the soundness of the rule thus invoked, it is not applicable herein for the reason that stockholders holding all or substantially all of the capital stock were not present at this meeting. Julius Friedland, holding one share, and Ella Hotaling, holding one-fourth of the capital stock, were both absent therefrom. Appellants also contend that the plaintiffs cannot be heard to complain as stockholders of their own action as directors, and that they having approved, both as directors and as stockholders, the execution of the deed to Richard, will not be permitted to maintain this action to cancel the same, even though they assume to do so in behalf of the corporation. This contention invokes the doctrine of estoppel and will be considered in a later portion of this opinion.

Appellants urge that the fiction of separate corporate entity should be disregarded where, as in the instant case, the Hotaling Corporation is the mere double of the Hotaling family. They assert that the members of the Hotaling family constituted virtually a partnership, owning the entire property and assets, using the corporation merely as a convenient instrument for the administration thereof. They argue that in such case, whether the members of the family assumed to act in behalf of the corporation, either as directors or as stockholders, they were in fact acting as principals in their own behalf, and that in such case irregularities or defects in the pursuit of the corporate authority should be disregarded. (Citing *Relley* v. *Campbell,* 134 Cal. 175 [66 Pac. 220]; *Llewellyn Iron Works* v. *Abbott*

*Kinney Co.,* 172 Cal. 210 [155 Pac. 986] ; *Rutz* v. *Obear,* 15
Cal. App. 435 [115 Pac. 67] ; *DuBois* v. *Padgham,* 18 Cal.
App. 298 [123 Pac. 207] ; *Shorb* v. *Beaudry,* 56 Cal. 446;
*Commercial etc. Co.* v. *Modesto Drug Co.,* 43 Cal. App. 162
[184 Pac. 964] ; *Hyman* v. *Karl Stern Co.,* 47 Cal. App. 605
[191 Pac. 47].) Respondents reply that the rule contended
for is applicable only to "one man corporations," where
one individual owns all of the stock. No good reason is
apparent why the rule should not apply with equal force
to a case wherein the corporate officers participating in the
transaction own all of the stock between them. The rule is
but a particular application of the general rule that a court
of equity will in a proper case, in order to prevent fraud and
do justice, disregard the fiction of separate corporate entity,
and have regard for the real substance of the transaction.
It is unnecessary to here decide this point. We shall as-
sume that this is a proper case for the application of the
rule and regard the plaintiffs Lavinia and Frederick as ·
having acted in the transaction relating to the deed here
in question, not as corporate agents, but as principals,
acting in their own behalf.

The trial court found that there was no delivery of the
deed to Richard. Appellants challenge this finding as in-
consistent with the admitted fact, also found by the court,
that there was a "manual tradition" of the deed, and that
the same has ever since remained in Richard's possession.
They invoke the rule that a grant cannot be held in escrow
by the grantee, and that there can be no such thing as a
delivery of a grant to the grantee conditionally. "Delivery
to him . . . is necessarily absolute and the instrument takes
effect thereupon, discharged of any condition on which the
delivery was made." (Sec. 1056, Civ. Code; *Mowry* v.
*Heney,* 86 Cal. 471, 475 [25 Pac. 17] ; *Bias* v. *Reed,* 169 Cal.
33 [145 Pac. 516] ; *Treat* v. *Treat,* 170 Cal. 329 [150 Pac.
53] ; *Avery* v. *Avery,* 42 Cal. App. 100 [183 Pac. 453] ; *Mc-
Carthy* v. *Security Bank,* 188 Cal. 229 [204 Pac 818] ;
*Stewart* v. *Silva,* 192 Cal. 405 [221 Pac. 191] ; *Lewis* v.
*Brown,* 22 Cal. App. 38 [133 Pac. 331] ; *Burkett* v. *Doty,*
32 Cal. App. 337, 345 [162 Pac. 1042].) **[9]** The validity
of this rule is not open to question, but it comes into ap-
plication only when there has been a delivery. The question
whether or not such delivery has taken place is a question

of fact involving the intent of the parties. [10] "It is essential to the validity of a transfer of real property that there be a delivery of the conveyance with intent to transfer the title, and the true test under which delivery is to be determined is in ascertaining whether in parting with the possession of the conveyance the grantor intended to divest himself of title. If he did, there was an effective delivery of the deed. If not, there was no delivery. The solution of this question is grounded entirely upon the intention of the grantor, and this essential matter of intention is a question of fact to be determined by the trial court from a consideration of all the evidence in a given case bearing upon the question." (*Williams* v. *Kidd*, 170 Cal. 631, 638 [Ann. Cas. 1916E, 203, 151 Pac. 1, 3]; citing *Bury* v. *Young*, 98 Cal. 451 [35 Am. St. Rep. 186, 33 Pac. 338]; *Kenniff* v. *Caulfield*, 140 Cal. 34 [73 Pac. 803]; *Estate of Cornelius*, 151 Cal. 552 [91 Pac. 329]; *Follmer* v. *Rohrer*, 158 Cal. 757 [112 Pac. 544]. See, also, *Hefner* v. *Sealey*, 175 Cal. 18 [164 Pac. 989]; *McCully* v. *McArthur*, 187 Cal. 194, 198 [201 Pac. 323]; *Cox* v. *Schnerr*, 172 Cal. 371, 381 [156 Pac. 509].) [11] The evidence in the case at bar supports the conclusion that Lavinia and Frederick in handing the deed to Richard, or in permitting him to retain possession thereof after its signature and acknowledgment by them, did not do so with any intent to transfer the title thereby. They both believed that the deed would be of no effect whatever until recorded. Under that belief the manual tradition of the deed would be but one step, and not the final step, in the process of the execution thereof. Under that belief tradition without recordation would be no more effective than would signature without delivery. The case is substantially on all-fours with *Kenney* v. *Parks*, 137 Cal. 527 [70 Pac. 556]. In that case, Mrs. Kenney, being the owner of certain real properties, signed without consideration two deeds purporting to convey them to her husband, and at his request and upon his representation that under the law the deed would be of no validity until recorded (which both parties believed to be true), and on his promise that he would not have them recorded unless he should survive her, the deeds were placed by her in his possession. It was at the same time understood that the instruments should never have any effect as a conveyance unless Kenney should

survive his wife. This court held that under the facts stated there had never been a delivery of the deeds, saying:

"To constitute delivery of a deed, it is not sufficient that there be a mere delivery of its possession, but this act must be accompanied with the intent that the deed shall become operative as such. (2 Boone on Real Property, sec. 295a; *Black* v. *Sharkey,* 104 Cal. 281 [37 Pac. 939]; *Denis* v. *Velati,* 96 Cal. 227 [31 Pac. 1]; *Harris* v. *Harris,* 59 Cal. 622.) Here both parties understood that the deed could have no effect until recorded; and there was therefore no intent that it should become immediately operative, or that it should ever become operative during the life of the grantor, or afterwards, unless the grantee should survive her. . . .

"We do not deem it necessary to discuss here the decisions in which it has been held that the delivery of a deed to the grantee, to take effect upon the death of the grantor, is an effective delivery, or the construction of the much misunderstood rule laid down in section 1056 of the Civil Code. To justify the application of the rule there must at least be a delivery of the deed, which implies the intent that it shall become at once operative, either absolutely or conditionally. (*Wheelwright* v. *Wheelwright,* 2 Mass. 447; *Black* v. *Sharkey,* 104 Cal. 279 [37 Pac. 939]; *Denis* v. *Velati,* 96 Cal. 223 [31 Pac. 1].) But such is not the case here, where the understanding, and therefore the intent, that it should or could take effect presently, was lacking. Nor do we deem it necessary to refer to the doctrine of escrow and to the ancient rule that delivery of a deed to the grantee *as an escrow* is to be taken as an absolute delivery, further than to say that these doctrines, and especially the latter, have often been misunderstood and misapplied. (2 Blackstone's Commentaries, 307; Shepherd's Touchstone, 58; Coke on Littleton, 36a, 9 Coke Rep. 137a.) All that need be said is, they can have no application here. (*Kenney* v. *Parks,* 125 Cal. 149 [57 Pac. 772].)"

We find no difference between the essential facts of that case and those of the case at bar, and know of no reason why the rule of that case should not be applied herein. Appellants suggest that that case is to be distinguished from the instant case by the fact that actual fraud was present

in that case and not in this. It is true that fraud was present in that case, but the decision was not placed upon that ground. The court in that case expressly repudiated the suggestion that its decision was in any respect predicated upon the element of fraud therein saying: "Mistake and fraud are indeed alleged and found, but the plaintiff's cause of action is complete without regard to either of these facts. For, eliminating these elements from the case entirely, there still remains the fact that the deeds were placed in the possession of her husband upon the understanding that they were to have effect only upon the contingency of her death before that of her husband. It follows that there was no delivery, or that the deed took effect subject to a trust in favor of the plaintiff for a reconveyance on the failure of the condition." *Kenney* v. *Parks* was cited with approval in the recent case of *Stone* v. *Daily,* 181 Cal., at page 577 [185 Pac. 665], and we think it affords ample justification for the conclusion of the trial court herein that there had been no delivery to Richard.

[12] We have thus far discussed the case upon the assumption that Richard shared in the belief and understanding of his mother and brother that a deed was ineffective for any purpose until recorded. The trial court did not so find, although the evidence would lead to this conclusion. The trial court did find, however, that at all the times here in question Lavinia and Frederick believed and understood that a deed to real property had no validity or effect unless and until it was recorded, and that Richard was at all times aware of this belief and understanding in the minds of Lavinia and Frederick. Therefore, if we should assume that he did not share this belief and understanding, we would be forced to regard him as a trustee dealing with his *cestuis que trust,* who would not be permitted to take advantage of their ignorance and mistake to procure a bene-fit for himself. If such an advantage were taken under such circumstances the conveyance would be voidable at their option.

[13] When we consider the fact of this mistaken belief in the minds of Lavinia and Frederick it becomes apparent that Richard is in no position to invoke the rule of estoppel as against them, whether we assume that he was aware of their

mistake or that he shared in it. This fact also furnishes another answer, complete in itself, to appellants' contentions to the effect that the deed to Richard, regarded as a corporate act, was ratified by the resolutions above referred to. If we assume that by the adoption of those resolutions, or either of them, the directors intended to ratify what had been done by Lavinia and Frederick in signing, acknowledging and making tradition of the deed, still it is plain that they did not intend thereby to ratify *a conveyance* of the property from the corporation to Richard. They did not regard those acts as effecting a conveyance, but rather as mere preliminaries to a possible conveyance which might be effected at some future time by the recordation of the deed. As to that, they had Richard's promise that he would not record the deed except in the contingency of Ella's remarriage. Our conclusion that the deed in question was never effectively delivered renders it unnecessary to consider the various arguments of respondents in support of their contention that by reason of various facts alleged and proved, some of which have not been mentioned herein, Richard is estopped to assert any claim to this property as against the defendant corporation.

Appellants contend that the findings of fact are inconsistent and conflicting and they specify a large number of instances of alleged inconsistencies therein. The great majority of the claimed inconsistencies inhere solely in appellants' theory as to the legal effect which should be given to particular facts found. The findings are detailed and voluminous and in many respects are susceptible to a construction which would give rise to inconsistencies therein. [14] It is the duty of an appellate court in reviewing the findings to give them a liberal construction so as to uphold rather than defeat the judgment. All the findings are to be read together and must be reconciled to prevent any conflict upon material points, if such reconciliation is possible. (2 Cal. Juris., pp. 871, 872, and cases cited.) Reviewing the findings in the light of this rule we find no material conflicts or inconsistencies therein, except possibly as to the findings in response to plaintiffs' third cause of action, which pleaded an estoppel as against the defendant Richard and which we have not discussed herein. [15] The findings in

193 Cal.—25

response to the first and second causes of action afford ample support to the judgment.

Judgment affirmed.

Waste, J., Lennon, J., Lawlor, J., Seawell, J., and Richards, J., concurred.

Rehearing denied.

All the Justices concurred.