## BAILESS, COUNTY TREASURER, ET AL. *v.* PAUKUNE.

No. 242. Submitted November 10, 1952.—Decided Dec. 8, 1952.

*R. L. Lawrence* and *R. F. Barry* submitted on brief for petitioners.

*Reford Bond, Jr.* submitted on brief for respondent.

*Acting Solicitor General Stern* filed a memorandum for the United States, as *amicus curiae,* supporting petitioners.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

In 1901 an Apache Indian, Paukune, was issued a trust patent to land in Caddo County, Oklahoma. This allotment was made under the General Allotment Act of Feb-

172

ruary 8, 1887, 24 Stat. 388, 389.[1]  Paukune died testate in 1919, leaving a wife Juana and a son Jose.  By his will he devised an undivided one-third interest in the allotment to his widow and an undivided two-thirds interest to his son.  No fee patent to the land has issued to Paukune, to his widow, or to the son.  The trust period of twenty-five years has from time to time been extended.  In other words, the United States still holds the land in trust for Paukune and his heirs.

In 1947 Juana's undivided one-third interest was assessed for ad valorem taxes in the amount of $21.33 and was advertised for sale for failure to pay.  She thereupon instituted this suit in the Oklahoma courts to enjoin the sale and any further levy of ad valorem taxes on the theory that the land was exempt from state taxation.  The petitioners answered, alleging that Juana was a non-Indian and therefore not exempt from the taxes.  The

---

[1] Section 5 of the Act provides in part as follows: "That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided,* That the President of the United States may in any case in his discretion extend the period.  And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: *Provided,* That the law of descent and partition in force in the State or Territory where such lands are situate shall apply thereto after patents therefor have been executed and delivered, except as herein otherwise provided . . . ."

trial court, without determining whether the widow was an Indian, held her interest nontaxable by the state; and the Supreme Court of Oklahoma affirmed, 206 Okla. 527, 244 P. 2d 1137, saying it mattered not under federal law whether the widow was Indian or non-Indian. The case is here on certiorari. 344 U. S. 812.

*Levindale Lead Co.* v. *Coleman,* 241 U. S. 432, dealt with restrictions on alienation attached to land under the Osage Indian Allotment Act of June 28, 1906, 34 Stat. 539. The Court held that the policy of that Act did not embrace persons who were not Indians, since the Congress sought to protect only those toward whom it owed the duties of a guardian. The same answer must be given here. If Juana is not an Indian, the United States has no interest of hers in the land to protect.[2] True, the United States holds the legal title to the land. But nothing in the Act prevents the devolution of the equitable interest to the widow. If she is not within the class whom Congress sought to protect, the trust is a dry and passive one; there remains only a ministerial act for the trustee to perform, namely the issuance of a fee patent to the *cestui.*

The judgment of the Supreme Court of Oklahoma is reversed and the cause is remanded to that court for proceedings not inconsistent with this opinion.

*So ordered.*

---

[2] And see *Mixon* v. *Littleton,* 265 F. 603; *Unkle* v. *Wills,* 281 F. 29, 35.