BOYS et al.    v.    LONG et al.
No. 35502.

Supreme Court of Oklahoma.
March 30, 1954.

Hershberger, Patterson, Jones & Thompson, Wichita, Kan., and Ross & Ross, Newkirk, for plaintiffs in error.

Lester R. Maris, Ponca City, and Charles L. Tyler, Pryor, for defendants in error.

BLACKBIRD, Justice.

Plaintiffs in error, hereinafter referred to as plaintiffs, commenced this action against defendants in error, hereinafter referred to as defendants, seeking possession, a partition of their various fractional interests in, and an accounting of the rents and profits from, an undivided one-third interest in a quarter section of land. Plaintiffs claimed title to fractional parts of this one-third interest is deraigned through deeds and devises by their ancestors, Arthur A. Slosson and J. H. Coleman, who for many years were engaged together in a banking business known as the Farmers State Bank at Newkirk, Oklahoma. It was in 1923, during the existence of this association that the said Arthur Slosson received the base deed, questioned by defendants herein, on behalf of himself and Coleman, from Albert Long and his then wife, Ona Long. The land had been allotted to Long's first wife, Amelia, as a member of the Kaw Tribe of Indians, and Amelia had died, whereupon said land descended to him and the couple's two sons, Sylvester and Christopher, defendants herein, in equal undivided shares.

The deed in question is one of general warranty and purported to convey the entire fee-simple title in the 160 acres without exception or reservation. It appears to have been conceded that, before having the instrument filed and recorded, Slosson, the grantee, altered it by inserting therein immediately preceding the legal description of the 160 acres, the words: "The undivided one third (⅓) interest in * * *".

At the trial, defendants contended this was a "material alteration" and invalidated the deed. They also contended the deed was null and void because the land was restricted and the deed was never approved by the Secretary of the Interior as provided in Section 11 of the Act of Congress of July 1, 1902, 32 Stat. 636, pertaining to conveyances of inherited Kaw Indian allotments.

By its findings and judgment, the trial court specifically upheld both of defendants' contentions and, as far as those issues were concerned, entered judgment accordingly, denying plaintiffs any and all relief. From said judgment, the latter have appealed, contending that the trial court erred on both of these crucial issues.

We will consider the last of these issues first. Defendants' contention that the Interior Secretary's approval was necessary to give the deed validity is based primarily upon the wording of Section 11 of the Act of Congress of July 1, 1902, supra, as follows:

"Sec. 11: That the adult heirs of any deceased Kansas or Kaw Indian, whose selection has been made or to whom a deed has been issued for his or her share of the lands of said tribe

in Oklahoma Territory, may sell and convey the lands inherited from such decedent; and, if there be both adult and minor heirs of such inherited lands; then such minors may join in a sale thereof by a guardian duly appointed by the proper court of the county in which said minor or minors may reside, upon an order of such court made upon petition filed by such guardian; *all* conveyances made under this provision to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe." (Emphasis added.)

Defendants say the word "all", above, includes conveyances by white, as well as Indian, heirs, but plaintiffs cite Levindale Lead and Zinc Mining Co. v. Coleman, 241 U.S. 432, 36 S.Ct. 644, 60 L.Ed. 1080, and references to it in Drummond v. U. S., 10 Cir., 131 F.2d 568, and In re Long's Estate, 207 Okl. 259, 249 P.2d 103, for their position that Section 11, supra, does not apply to adult heirs, such as Albert Long, who have never been members of any Indian tribe, by adoption or otherwise. Defendants contend that the restrictions placed upon the alienation of Kaw Indian allotments run with the land into the hands of any and all heirs regardless of whether they are Kaw Indians or not, citing Take v. Miller, 139 Okl. 115, 281 P. 576, U. S. v. Reily, 290 U.S. 33, 54 S.Ct. 41, 78 L.Ed. 154, and other cases which involved lands allotted to members of the Five Civilized Tribes and portions of Indian allotments inherited by persons who were members of the same tribe as the allottee, or of some other tribe. We have examined all of these cases but the only one of them that could conceivably give support to defendants' position is Bailess v. Paukune, 206 Okl. 527, 244 P.2d 1137, wherein this court refused to apply the principle enunciated in the Levindale Zinc Mining case, because the Osages, one of whose allotments was involved, were expressly excepted from the General Allotment Act. Since the issues were joined in this appeal, however, this Court's decision in the Bailess case has been reversed by the U. S. Supreme Court in an opinion showing that the fact that the heir is a non-Indian

is the decisive one rather than whether the allotment is one of a tribe excepted from or included in the General Allotment Act. See Bailess v. Paukune, 344 U.S. 171, 73 S.Ct. 198, 97 L.Ed. 197. In view of this recent decision and the indications in the Act as a whole that it applies only to Indians, we must therefore hold that the requirement of approval by the Secretary of the Interior contained in Section 11 of the Act of Congress of July 1, 1902, supra, does not apply to the interest in the allotment of a restricted Kaw Indian inherited by a white person like Albert Long, who is not a member of any tribe of Indians.

As to the second of the decisive issues determined by the trial court, plaintiffs say that the alteration of the deed in question by their predecessor in title, Arthur A. Slosson, could not have been a "material" alteration because it did not vary the legal effect of said instrument. Defendants argue that since the alteration of the deed undeniably occurred after its delivery to Slosson, the grantee, and (as circumstantially indicated) probably after the death of the grantors, Albert and Amelia Long, with proof of their consent to the alteration being wholly absent, no rights could be founded upon said altered instrument, citing French v. Ayres, 201 Okl. 494, 207 P.2d 308, Sandlin v. Henry, 180 Okl. 334, 69 P.2d 332, and cases involving promissory notes, leases and other executory written contracts such as Bailey v. Evans, 100 Okl. 278, 229 P. 221, and Francen v. Oklahoma Star Oil Co., 80 Okl. 103, 194 P. 193, and other cases annotated following the "contract alteration" statute, 15 O.S.1951, § 239, in Oklahoma Statutes Annotated.

While some of the same principles apply to deeds as are made applicable by statute to contracts with "executory obligations" it is doubtful whether all of such principles have the same application to the former as the latter. In this connection, see Valley State Bank v. Dean, 97 Colo. 151, 47 P.2d 924, 925; 2 Am.Jur., Alteration of Instruments, Sec. 28, with cases cited under Notes 4 and 5; Sec. 37, with cases cited under Notes 10, 13 and 14, and Sec. 39, with cases cited under Notes 9–11, inclusive. However, in either case, the alter-

ation must be a "material" one. The most reliable test of what is a material alteration seems to be: Does it change the legal effect of the instrument? Francen v. Oklahoma Star Oil Co., supra; Criner v. Davenport-Bethel Co., 144 Okl. 74, 289 P. 742; Annotations, 73 A.L.R. 652. The law implies that the parties intended the legal result or effect of their deed. 2 Am.Jur., Alteration of Instruments, Secs. 18, 22, 49. In Oklahoma, a grantor's execution and delivery of a warranty deed conveys his "whole interest * * * in the premises described", Title 16 O.S.1951, § 19, and the fact that he may own less than the entire fee does not prevent his passing title, by said deed, to the interest he does own. Skelly Oil Co. v. Butner, 201 Okl. 372, 205 P.2d 1153; Stone v. Easter, 93 Okl. 68, 70, 219 P. 653, 655. That the deed, after being fully executed and delivered, is altered, to more particularly describe the grantor's interest, in no way effects an enlargement or diminution of that interest or his rights and obligations thereunder. We must therefore hold that the alteration of the deed in question to more particularly and correctly describe the grantors' interest was not a material alteration. In addition to the above, see Stiles v. City State Bank, 56 Okl. 572, 156 P. 622, 16 Am.Jur., Deeds, Secs. 327, 329 and 3 C.J.S., Alteration of Instruments, § 39, p. 956. The deed speaks for itself. It is a solemn instrument, and, by its regular execution and delivery, the grantors must be presumed (in accord with the presumptions which in law accompany such instruments) to have intended to divest themselves of all title and interest they owned in the property, absent clear and convincing proof of material mistake, fraud, duress, or other element which would vitiate it as such total and complete conveyance or alienation. The possession of the deed by the grantee, Slosson, was prima facie evidence both of this, and of Mr. and Mrs. Long's absolute delivery of the deed. Murrer v. Murrer, 106 Ind.App. 304, 19 N.E.2d 494; 16 Am. Jur., Deeds, Secs. 381, 382, 397; 26 C.J.S., Deeds, § 184b, pages 594, 595.

We now turn to the evidence, upon which defendants rely, to overcome these presumptions. Their theory was that the deed was only conditionally delivered, or that it was drawn so as to convey the entire fee and delivered, as such conveyance, only upon the condition that Albert Long's sons, Christopher and Sylvester, would convey their undivided one-third interests to Albert, and (apparently on the theory of after-acquired title) the deed would then be effective to place the entire title in Slosson, whereupon, in accord with the parties' alleged agreement, Slosson would then sell the property for the payment of the balance due upon a loan Slosson and Coleman, or the Farmers State Bank, had made to Albert Long, and, after said sale, all sale proceeds in excess of the amount necessary to pay said balance, would be paid over to Christopher and Sylvester. To support this theory, these defendant sons introduced in evidence copies of the following letters which Slosson wrote Mr. A. R. Snyder, Superintendent of the Pawnee Indian Agency:

"Farmers State Bank
"Newkirk, Okla.
"Sept. 2, 1931
"Mr. A. R. Snyder
"Superintendent Pawnee Agency
"Pawnee, Okla.
"My
"My dear Mr. Snyder;

"Your favor of the 1st of August received after returning from my vacation, and in regard to the status of the money advanced to Albert Long in the Matter of the undivided Kaw Allottee interest #176 Amelia Long, it is as follows, We advanced Albert Long $4450# as a loan upon which he paid $370# and suit was filed for foreclosure on January 22, 1923, but on April 14th 1923 Albert and Ona Long (his second wife) gave us a deed for the whole quarter SW–22–27–4E, with the understanding that Chris and Ves, the two heirs of Amelia would deed their two thirds to Albert Long to Pay this mortgage and we were to pay them the difference between said mortgage and the salable price of the land but Chris did not stand to the agreement hence we have the deed, duly acknowledged but not of record as it conveyed the full quarter, would be glad to bring or mail

the deed down for your consideration if you think the Department would accept it as a conveyance of his *of his* one third interest, Albert Long and Ona Long are both dead Ona Long died about two years before Al. Some time after the filing of the mortgage foreclosure we bought some surplus land from Ves and Chris Long and placed $1000# on the Albert Long note which leaces the present balance left of $3000# and accrued interest.

"Thanking you very much for your interest in this matter I am,

"Very respectfully
"/s/ A. A. Slosson
"A. A. Slosson, President."
"The Farmers State Bank
"Newkirk, Okla.
"December 31, 1930.
"Mr. A. R. Snyder, Superintendent,
"Pawnee, Oklahoma
"Dear Mr. Snyder:

"Could you suggest any way that I could obtain title to my one third of the Long property? Any suggestion would certainly be appreciated.

"Respectfully
"AAS:CS       /s/ A A Slosson."

The only oral testimony concerning the matter is that of the defendant, Christopher Long, the most pertinent parts of which appear in the following excerpt from the record:

"Q. Did you know Mr. A. A. Slosson during his lifetime? A. Pretty well.

*       *       *       *       *       *

"Q. Did you have any dealings with him during the year 1923? A. Yes.

"Q. And what was that about? A. Well, I was called in there about some deeds.

"Q. To what property? A. Well, on my mother's homestead, Father's one-third.

"Q. And did Mr. Slosson go over a plan with you—

"The Court: * * * What was Mr. Slosson's plan that he outlined to you? A. Well, he asked me if I

would be willing to give my father a deed, and at that time he had a deed for the full 160—

*       *       *       *       *       *

"Q. And did he show you the deed? A. Yes, sir.

"Q. What were you to do about it? A. Well, I was supposed to have a deed made out to my father so it would pass through the office.

"Q. What office? A. The Pawnee Indian Office, in the regular regulations, you know of the Government, and then my father was to turn those deeds to Slosson for a payment there of a mortgage or something running around about $4500.00, and he would sell the place then and all over the $4500.00, that he would return to us.

"Q. Return to who? A. To I and Sylvester.

"Q. Did you make a deed then on that farm? A. No.

*       *       *       *       *       *

"Q. I believe you said that this conversation or interview with Mr. Slosson took place in 1923? A. That's when we were talking about the deed.

"Q. Do you remember what date in 1923? A. No, I don't remember as to the date.

"Q. You say he—did he show you any deed or any paper at that time? A. He showed me a deed for 160 acres.

"Q. From whom to whom? A. From my father to Slosson.

"Q. Then outlined to you a plan whereby you would procure the approval of the Pawnee Indian Agency to the execution by you of a deed to your father for an undivided one-third interest? A. That's right.

"Q. You didn't do that? A. No.

"Q. Did you have any more conversation or any more to do with the deal? A. No, that's the last that I had with him of that deal. I and my brother talked it over.

"Q. I don't want anything about the conversation between you and

your brother—you didn't do it? A. We didn't do it. We objected to it.

"Q. Neither one of you did it? A. No, sir.

"Q. You agreed with your brother that you wouldn't do it? A. That's right.

"Q. But you had no further interview with Mr. Slosson? A. No further; I didn't have need to."

We think the above evidence is insufficient to overcome the above described presumptions accompanying the deed, which, as we have pointed out, was, before and irrespective of the alteration, regular in all respects and effective to convey whatever interest in the quarter section of land described therein that the witness' father, Albert Long, owned. This evidence constituted no direct contradiction of the recital contained in the deed of a valid consideration nor overcame the presumption that the grantors' delivery of said deed to the grantee therein named was an absolute, rather than a conditional, delivery. (In at least one state this presumption is statutory. See Hotaling v. Hotaling, 193 Cal. 368, 224 P. 455, 460, 56 A.L.R. 734.) The present case is readily distinguishable from those in which the instrument involved was not "ripe" for delivery, Wood v. Eminger, 44 N.M. 636, 107 P.2d 557; French v. Ayres, supra, and was not *completely* executed. The presumptions above referred to are also supported by the circumstances that after acquiring this interest, the grantee consistently paid a one-third share of the ad valorem taxes on the property. Also, as far as the record shows, the grantors, Albert and Amelia Long, never again asserted any claim or right to that interest, nor attempted in any manner to obtain cancellation or return of their deed. The evidence does indicate that it was contemplated or understood before said deed was delivered that the grantee would also obtain the outstanding interests of Christopher and Sylvester, but it falls short of proving that title to the father's interest was not to pass by this deed *unless and until* Christopher and Sylvester also executed deeds to their interests. Slosson's correspond-

ence with the Pawnee Agency Superintendent's office concerning the matter, and his apparent apprehension concerning the sufficiency of the deed to convey any title to him, is understandable in view of the question that has long existed with reference to the necessity of the Interior Secretary's approval thereof, which question has been finally resolved herein. Clearly, Slosson's reference in his letter of December 31, 1930 to the interest involved as "my one third" indicates no doubt on his part as to his *ownership* but only a doubt as to his *title*.

In accord with the foregoing, the judgment of the trial court is hereby reversed and the within cause remanded to said court with instructions to said court to set same aside and proceed in a manner not inconsistent with the views herein expressed.

HALLEY, C. J., and CORN, DAVISON, ARNOLD and WILLIAMS, JJ., concur.

O'NEAL, J., dissents.