Flossie Parks CHEMAH, Clyde Lee Chemah, Bertha C. Frantz (was Chemah) Charles Malone Chemah and Patsy Ruth Powers (was Chemah), Plaintiffs,

v.

Marlene N. FODDER and Clarence Fodder, her husband, A. F. Whitehead, and the United States of America, Defendants.

Civ. No. 66–295.

United States District Court
W. D. Oklahoma.

Sept. 26, 1966.

Leon Shipp, Oklahoma City, Okl., Hugh F. Fitzsimons, Walter, Okl., for plaintiffs.

Robert L. Berry, Asst. U. S. Atty., Oklahoma City, Okl., for defendants.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

The plaintiffs, being five of the cotenants of a Comanche Indian allotment, the title to which is held in trust by the United States, brought an action in the District Court of Cotton County, Oklahoma, against the remaining surface cotenant, the agricultural tenant and the United States to partition the allotment, for an accounting between the cotenants, and for the extinguishment of a mortgage against the interest owned by the defendant cotenant. The United States removed to this court and moved to dismiss upon the ground that the United States is an indispensable party to the action and has not consented to be sued therein, and upon the further ground that the plaintiffs have not exhausted their administrative remedy.

The land which is the subject of this action is described as Lots Six and Seven and the East Half of the Southwest Quarter of Section Six, Township Three South, Range Ten West of the Indian Meridian in Cotton County, Oklahoma. It was allotted in 1901 to a Comanche Indian, Chemah, and a trust patent was issued. This allotment was made in the manner and to the extent provided in the General Allotment Act of February 8, 1887, 24 Stat. 388, 389.[1] No fee

---

1. Section 5 of the Act, 25 U.S.C. § 348, provides in part as follows: "Upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefor in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted, for the period of twenty-five years in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State or Territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever: *Provided*, That the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands

patent to the land has issued to Chemah or to her heirs. The trust period of twenty-five years has from time to time been extended,[2] so that the United States continues to hold the title in trust at this time for seven heirs of the allottee.

One of the heirs, the plaintiff Flossie Parks Chemah, is the non-Indian widow of the allottee's deceased son. Plaintiffs contend that because of this heir's non-Indian status her inherited interest is not subject to the trusteeship of the United States and that the Secretary of the Interior is therefore without power or jurisdiction to partition her interest. It is urged that only the appropriate Oklahoma court is vested with jurisdiction to effect partition in such situations. The authority, I conclude, is to the contrary.

■ The inheritance of an interest in Indian land allotted under the General Allotment Act by one not of Indian blood does not operate to terminate the trust as to such interest. True, as was pointed out in Bailess v. Paukune, 344 U.S. 171, 173, 73 S.Ct. 198, 97 L.Ed. 197 (1952), the trust becomes a dry and passive one by reason of the fact that the non-Indian heir does not fall within that class of persons to whom the United States owes a duty of protection. As was stated in that decision, however, the title continues to remain in trust until such time as the ministerial act of issuing the final patent in fee has been performed.

■ The Indian probate statute [3] confers upon the Secretary of the Interior the exclusive duty of determining the heirs of deceased Indians for whom lands are held in trust under the General Allotment Act and provides that his decision thereon shall be final and conclusive. That enactment also authorizes the Secretary to partition the land between the heirs. This authority is further implemented by the Act of May 18, 1916.[4] Clearly there is no lack of Secretarial authority under which plaintiffs may obtain relief.

The plain import of the decision of Bailess v. Paukune, supra, is to require the issuance of a patent in fee to the non-Indian plaintiff. The Secretary of the Interior may cause her interest to be

---

set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void * * *."

2. Executive Orders Nos. 4398 dated March 18, 1926, and 7206 dated October 14, 1935, extended the trust period for additional ten year periods. Executive Order No. 9659 dated November 21, 1945 extended the trust period for an additional twenty-five years, or until 1971.

3. The Act of June 25, 1910, 36 Stat. 855, as amended, 25 U.S.C. § 372, provides in part as follows: "When any Indian to whom an allotment of land has been made, or may hereafter be made, dies before the expiration of the trust period and before the issuance of a fee simple patent, without having made a will disposing of said allotment as hereinafter provided, the Secretary of the Interior, upon notice and hearing, under such rules as he may prescribe, shall ascertain the legal heirs of such decedent, and his decision thereon shall be final and conclusive. If the Secretary of the Interior decides the heir or heirs of such decedent competent to manage their own affairs, he shall issue to such heir or heirs a patent in fee for the allotment of such decedent; if he shall decide one or more of the heirs to be incompetent, he may, in his discretion, cause such lands to be sold: *Provided,* That if the Secretary of the Interior shall find that the lands of the decedent are capable of partition to the advantage of the heirs, he may cause the shares of such as are competent, upon their petition, to be set aside and patents in fee to be issued to them therefor. * * *"

4. 39 Stat. 127, 25 U.S.C. § 378, which provides as follows: "If the Secretary of the Interior shall find that any inherited trust allotment or allotments are capable of partition to the advantage of the heirs, he may cause such lands to be partitioned among them, regardless of their competency, patents in fee to be issued to the competent heirs for their shares and trust patents to be issued to the incompetent heirs for the lands respectively or jointly set apart to them, the trust period to terminate in accordance with the terms of the original patent or order of extension of the trust period set out in said patent."

partitioned in kind from the remainder of the allotment and issue a patent in fee to her for her aliquot part. It would seem that he could also issue to her a patent in fee for her undivided interest in the whole allotment, but it is suggested that the use of such method would solve nothing and would further confound the existing problems of multiple ownership.

State laws are not applicable to allotted Indian lands except to the extent that Congress has so authorized. State of Minnesota v. United States, 305 U.S. 382, 387, 59 S.Ct. 292, 83 L.Ed. 235 (1939); McKay v. Kalyton, 204 U.S. 458, 469, 27 S.Ct. 346, 51 L.Ed. 566 (1907). Counsel have not cited, nor have I been able to find, a federal statute consenting to a suit in the courts of the State seeking to partition property held in trust by the United States under the General Allotment Act. Nor would such congressional authorization be consonant with the language of that enactment because of its provision that " * * * if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void: * * *." Partition actions brought under applicable Oklahoma law presume the right to sell the land when it is found that the same is not susceptible of equitable partition in kind.

It is elemental that an action against property in which the United States has an interest is a suit against the United States. The United States thereby, of necessity, becomes an indispensable party to any action affecting such property. In United States v. Brosnan, 363 U.S. 237, 250, 80 S.Ct. 1108, 1116, 4 L.Ed.2d 1192 (1960), the court said:

" * * * Under the decisions of this Court, a judicial proceeding against property in which the Government has an interest is a suit against the United States which cannot be maintained without its consent. The Siren, 7 Wall. 152, 19 L.Ed. 129; State of Minnesota v. United States, 305 U.S. 382, 59 S.Ct. 292, 83 L.Ed. 235; United States v. State of Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L.Ed. 1327. It has been suggested that this principle applies only where the Government holds a fee interest or such other interest in the property as to render it an indispensable party under state law. See United States v. Cless, 3 Cir., 254 F.2d 590, 592. That, however, seems a dubious distinction since whether or not the United States is an indispensable party to a judicial proceeding cannot depend on state law. See State of Minnesota v. United States, supra, 305 U.S. at page 386, 59 S.Ct. at page 294, 83 L.Ed. 235."

Authorities supporting the rule that the United States, as sovereign, is immune from suit save as it consents to be sued are collected in United States v. Sherwood, 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Accordingly, I find that the United States has an interest in the property sought to be partitioned, is an indispensable party to the action, and has not consented to be so sued.

Plaintiffs complain that the defendant Marlene N. Fodder has assumed possession of the allotment to the exclusion of the plaintiffs, has been utilizing and continues to utilize it for agricultural purposes, has failed to share various items of income with or account therefor to the plaintiffs, and that the Bureau of Indian Affairs will not place the allotment under a Departmental agricultural lease in order that plaintiffs may share in the income. The government does not deny this allegation, but asserts that the provisions of the Heirship Leasing Act of July 8, 1940, 54 Stat. 745,[5]

5. 25 U.S.C. § 380, which provides as follows: "Restricted allotments of deceased Indians may be leased, except for oil and gas mining purposes, by the superintendents of the reservation within which the lands are located (1) when the heirs

prevent the agency superintendent from entering into a lease contract when the land is in use by one of the heirs. Plaintiffs contend that the application of the statute to them is not only unfair but leads to an absurd result. With that view the Court is not inclined to disagree. But the question is a political one and not a judicial one. The judiciary cannot question or inquire into the motives which prompt the Congress to enact legislation in the field of Indian affairs, no matter how unfair or absurd the results of its application. Lone Wolf v. Hitchcock, 187 U.S. 553, 568, 23 S.Ct. 216, 47 L.Ed. 299 (1903).

 Indians are citizens of the United States and as such have the capacity to sue in the courts to the same extent as all other citizens. Hatahley, et al. v. United States, 351 U.S. 173, 76 S. Ct. 745, 100 L.Ed. 1065 (1956). Nor are they immune from suit in their individual capacities. Plaintiffs therefore are not without a remedy. They may bring their action for an accounting in the appropriate State court and reduce their claim to judgment. It should be pointed out that any judgment so obtained, however, cannot be enforced against the Indian property of the defendants.[6]

 Finally, plaintiffs complain that the defendant Marlene N. Fodder has encumbered the allotment with a mortgage. The government admits that the United States holds a mortgage upon her individual interest but asserts that it neither encumbers the plaintiffs' interests nor imposes an obstacle to any partition effected by the Department of the Interior. I am in agreement that the government, which holds the mortgage, can readily shift its security to any aliquot part of the allotment which may ultimately be partitioned in kind to this defendant.

Accordingly, an order will be entered dismissing this action for lack of jurisdiction.

---

or devisees of such decedents have not been determined and (2) when the heirs or devisees of the decedents have been determined, *and such lands are not in use by any of the heirs* and the heirs have not been able during a three-months' period to agree upon a lease by reason of the number of the heirs, their absence from the reservation, or for other cause, under such rules and regulations as the Secretary of the Interior may prescribe. The proceeds derived from such leases shall be credited to the estates or other accounts of the individuals entitled thereto in accordance with their respective interests." (Emphasis supplied.)

6. The amendment of June 21, 1906, 34 Stat. 327, to the General Allotment Act, 25 U.S.C. § 354, provides as follows: "No lands acquired under the provisions of sections 331–334 of this title shall, in any event, become liable to the satisfaction of any debt contracted prior to the issuing of the final patent in fee therefor."