## STONE v. EASTER.

No. 12201—Opinion Filed Oct. 23, 1923.

**1. Appeal and Error — Briefs—Contents— Rules of Court.**

In the preparation of briefs on appeal to this court attorneys should be diligent in complying with the reasonable requirements embodied in the rules adopted and promulgated by this court. They are designed to expedite the work of this court by requiring attorneys to specifically point out the matters and things relied on as constituting prejudicial error of the trial court.

**2. Deeds — Warranty Deed — Estate Conveyed—Restraint on Alienation.**

A warranty deed in statutory form by apt language conveys an absolute fee, and this estate is incompatible with a lesser power over it than that of complete possession, enjoyment, and right of disposition. Such an intention being manifest from the language of a warranty deed, any clause inserted therein in restraint of alienation is subordinate to this intention of the grantor as manifested by the language of the conveyance, and, being subordinate, and wholly inconsistent therewith, is inoperative.

**3. Appeal and Error — Review—Questions of Fact—Pleading—Estoppel.**

In pleading estoppel great particularity is required, but, the legal sufficiency of such special plea being sustained, a judgment based thereon will not be disturbed on appeal because of a conflict in the testimony, where there is testimony in the case which reasonably sustains the judgment. the credibility of the witnesses being a matter for determination by the trial court in an equitable action.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Washita County; Thomas A. Edwards, Judge.

Action by Laura B. Stone against R. M. Easter to recover possession of certain premises described in plaintiff's petition and for damages. Judgment for defendant, and plaintiff brings error. Affirmed.

This suit involves the title to the southwest quarter (S. W. ¼) of section seventeen (17) in township eight (8) north, of range eighteen (18) west of the Indian Meridian in Washita county, Okla. Isaac Barritt owned this land in 1905, and on September 13, 1905, he deeded it to his daughter, Laura B. Barritt, who afterwards intermarried with one Stone, and who is the plaintiff in error in this case. The deed by which he conveyed the title to her contained full covenants of warranty, following which was this clause:

"Provided, that said second party shall not sell, transfer, or alienate said premises until she has attained the age of forty (40) years."

On September 15, 1913, while plaintiff in error was the owner of the property in question and in peaceable possession of it, she and her husband, George W. Stone, executed a mortgage to the Pittsburg Mortgage Investment Company in the sum of $1,800, covering the land in question. The mortgage was recorded in the office of the county clerk of Washita county and was afterwards assigned to one Charles M. Armstrong, and on January 22, 1916, the mortgagors being in default, Charles M. Armstrong, as assignee of the Pittsburg Mortgage Investment Company, began a foreclosure proceeding in the district court of Washita county. Summons was duly served upon both of the defendants personally, and defendant Laura B. Stone employed counsel, who appeared for her in the foreclosure proceeding and filed an answer, setting up, among other things, the restraining clause in the deed from Isaac Barritt and the resultant invalidity of her act in mortgaging the same.

The plaintiff, Armstrong, filed a motion for judgment on the pleadings, and on March 4, 1916, the district court of Washita county awarded judgment on the pleadings, foreclosing the mortgage and directing the sale of the property in the usual manner.

Easter had offered $6,500 for the farm and plaintiff in error finally decided to accept the offer. Easter was a farmer residing in Texas who owned a farm cornering with the farm in question in Washita county. A representative of one of the banks in Sentinel, Okla., notified Easter that plaintiff in error had decided to accept his offer of $6,500. Easter immediately came to Sentinel and went to the Citizens' State Bank where Frank Bolding was cashier. This was on March 1, 1916. A. M. Beets, attorney for the Stones in the foreclosure proceeding, was reached by telephone and he came to the bank, and, finding the Stones not there, took his car and drove out to the place of their residence and brought plaintiff in error and her husband, George Stone, or G. W. Stone as he is referred to in some of the proceedings, to the bank. There were then assembled at the bank plaintiff in error and her husband; their attorney, A. M. Beets; R. M. Easter, defendant in error; and Frank Bolding, cashier; Easter was willing to buy the land, but had heard about the discrepancy in the

title and was not willing to let go of his money until the title had in some manner been cleared up. Mr. Beets, attorney for plaintiff in error, explained that the foreclosure proceeding would be heard on the following Saturday, which was March 4, 1916, and that he did not have very much confidence in the defense that he had interposed, and that the court would either sustain his defense and clear the title, or would overrule his defense and foreclose the mortgage. If his defense should be overruled this would be an adjudication that the clause in the deed attempting to restrict the power of alienation was void and the title would then be good. Acting upon this suggestion, defendant in error deposited with the bank $6,500 in cash, and various cashier's checks were issued by the banker at the request of the Stones or their attorney, the aggregate of which amounted to the full $6,500. These were placed in the hands of Beets to be returned to Easter in case the court held the restrictive clause in the deed valid, and therefore held the title to be in such condition that plaintiff in error could not convey it to defendant in error. On the other hand, if the court rendered a decree foreclosing the mortgage and holding the restrictive clause in the deed void, the cashier's checks held by Beets were to be used and distributed in accordance with instructions from the Stones.

On March 4, the court rendered the judgment above referred to. Beets paid off the judgment with one of the cashier's checks; paid himself $150 for representing plaintiff in error in the foreclosure suit, and $25 for a trip he made out to their house early in the negotiations; and distributed the other cashier's checks according to their instructions, at least a part of which were delivered directly to plaintiff in error. Defendant in error went into immediate possession of the land and is still in possession of it, and this suit is in ejectment, to recover possession of the land, and for damages for wrongful detention of it.

The parties will be hereafter referred to as plaintiff and defendant respectively, as they appeared in the trial court.

D. G. Elliott and J. P. Evers, for plaintiff in error.

Massingale & Duff, for defendant in error.

Opinion by LOGSDON, C. Plaintiff in error has made no effort in her brief to comply with Rule 26 of this court in reference to specifications of errors and this

appeal might justifiably be dismissed for that reason. Notwithstanding the additional work thus entailed the brief and case-made have been carefully read in their entirety out of abundance of caution that nothing favorable to plaintiff should be overlooked.

In the absence of specifications of error as required by the rules of this court, the examination made of the brief and case-made suggests that plaintiff's contentions may be comprehended under the single proposition: That the trial court erred in overruling the motion of plaintiff for a new trial herein.

This brings under review the entire record of the trial, and in order of sequence the first question to be determined is whether defendant's special plea of estoppel is legally sufficient and reasonably sustained by the evidence.

Plaintiff's sole reliance on the trial was the clause in her deed from her father which purported to restrain her right of alienation until she attained the age of 40 years. This deed was an ordinary warranty deed in statutory form, but following the covenants of warranty this clause was inserted:

"Except provided, that said second party shall not sell, transfer or alienate said premises until she had attained the age of forty (40) years."

Defendant pleaded as an estoppel, substantially, that on September 15, 1913, plaintiff and her husband mortgaged the premises to the Pittsburg Mortgage Investment Company for the sum of $1,800, and that said mortgage was foreclosed by the assignee thereof, after default, by judgment of the district court of Washita county, entered on March 4, 1916; that said purported restraint on alienation in plaintiff's deed was pleaded as a defense in said foreclosure action and was fully adjudicated; that after judgment in said foreclosure action this defendant purchased said premises from this plaintiff, paying her therefor the sum of $6,500, represented by the amount of said judgment, taxes, and costs in the sum of $2,530.53, evidenced by a cashier's check for that amount, and other cashier's checks in various amounts, all amounting to the total of the purchase price and that by reason of having received and retained said $6,500 this plaintiff is now estopped to assert any claim to said premises adverse to defendant.

Some question is raised here as to the sufficiency of service on plaintiff in the foreclosure action to support that judgment upon the question of former adjudication,

so a determination of the validity of the restraining clause in the deed may eliminate the other question from consideration. This restraining clause in the deed involves a consideration of certain statutory provisions. Section 8401, Comp. Stat. 1921 (Rev. Laws 1910, sec. 6596), provides:

"Estates in real property, in respect to the duration of their enjoyment are either; First. Estates of inheritance, or perpetual estates. Second. Estates for life. Third. Estates for years; or, Fourth. Estates at will."

Section 8402, Comp. Stat. 1921 (Rev. Laws 1910, sec. 6597), defines an estate of inheritance thus:

"Every estate of inheritance is a fee, and every such estate, when not defeasible or conditional, is a fee-simple or an absolute fee."

So much of section 5259, Comp. Stat. 1921 (Rev. Laws 1910, sec. 1162), as is necessary to be considered in this connection reads as follows:

"A warranty deed made in substantial compliance with the provisions of this chapter shall convey to the grantee, his heirs or assigns, the whole interest of the grantor in the premises described, and shall be deemed a covenant on the part of the grantor that at the time of making the deed he is legally seized of an indefeasible estate in fee simple of the premises," etc.

By the deed in question the grantor conveyed to the plaintiff his "whole interest" in the premises, and that interest was "an indefeasible estate in fee simple." There are no apt words in the deed making the estate conveyed either defeasible or conditional, therefore plaintiff took an absolute fee. Can a grantor of an absolute fee restrain its alienation in the hands of the grantee? This could not be done at common law. A fee simple estate and a restraint on alienation could not coexist because wholly incompatible. "One person cannot own the fee, and another person the right of alienation." In this country the common law rule is generally followed, though some authorities recognize a distinction between an unqualified restraint on alienation and a restraint for a limited time. But it seems difficult to define the limits within which a restraint on alienation is valid and beyond which it becomes void. If such a provision is held to be reasonable and valid for a five-year period, what new consideration of expediency or public policy imparts invalidity to it during the next 12 months or the next five years?

The rules for the interpretation of con-

tracts apply likewise to the interpretation of deeds. Joiner et al. v. Ardmore Loan & Trust Co., 33 Okla. 266, 124 Pac. 1073. Section 5053, Comp. Stat. 1921, provides:

"Particular clauses of a contract are subordinate to its general intent."

Section 5056 provides:

"Words in a contract which are wholly inconsistent with its nature, or with the main intention of the parties, are to be rejected."

There can be no question in this case but that it was the intention of the grantor in the deed in question to not only vest in his daughter the beneficial interest in this property, but that she should have full legal and equitable title as well—an estate of inheritance. This intention being clearly manifested by the language of the conveyance, the clause in restraint of alienation is subordinate to such intent, and, being wholly inconsistent with the intention to convey the fee, must be rejected. Potter v. Couch 141 U. S. 296; Greene v. Greene (N. Y.) 26 N. E. 739; Jones v. Port Huron Engine & Thresher Co. (Ill.) 49 N. E. 700; Re Schilling (Mich.) 61 N. W. 62; Anderson v. Cary, 36 Ohio St. 506; Clark v. Clark (Md.) 58 Atl. 24; Zillmer v. Landguth (Wis.) 69 N. W. 568; Winson v. Mills (Mass.) 32 N. E. 352; Morse v. Blood (Minn.) 71 N. W. 682; Fowler v. Duhue (Ind.) 42 N. E. 623; Pritchard v. Bailey (N. C.) 18 S. E. 668; Seay v. Cockrell (Tex.) 115 S. W. 1160; Deepwater Railway Co. v. Honaker (W. Va.) 27 L. R. A. (N. S.) 388; Lawrence v. Singleton (Tenn.) 17 S. W. 265; Miller v. Denny (Ky.) 34 S. W. 1079.

The provision in restraint of alienation being inoperative, the inquiry reverts to defendant's plea of estoppel and the sufficiency of the evidence in support thereof. It is shown by the record without contradiction that judgment of foreclosure was rendered in the district court of Washita county against plaintiff and in favor of the assignee of Pittsburg Mortgage Investment Company March 4, 1916; that on March 1, 1916, plaintiff executed a deed to the premises in favor of defendant for a stated consideration of $6,500, and that this deed was filed for record March 4, 1916; that on the same date shown by his deed defendant had four cashier's checks issued payable to plaintiff, Laura B. Stone, as follows: one for $200, which was paid March 6; one for $3,200, which was paid March 6; one for $60.25, which was paid March 11; one for $334.22, which was paid March 20.

Each of these bears the endorsement of plaintiff. On the same date defendant had issued three other cashier's checks payable to A. M. Beets, plaintiff's attorney in the foreclosure case, as follows: one for $2,530.53, which was paid March 9th; one for $150 and one for $25, which were paid March 9th and 10th respectively.

The following facts are testified to by defendant, R. M. Easter; by J. F. Bolding, the banker, and by A. M. Beets, plaintiff's attorney in the foreclosure case—plaintiff denies them or says she doesn't know—viz.: That all the parties met at the bank about 7 p. m., March 1st, following prior negotiations between plaintiff and defendant for purchase of the property by defendant and payment of the mortgage indebtedness; that at this meeting A. M. Beets, plaintiff's attorney, explained that the judment in the foreclosure action, whichever way it went, would remove all doubt as to the title to the premises; that thereupon the deed was executed and the cashier's checks issued in payment, all being placed in the hands of A. M. Beets to be held until the judgment in the foreclosure action was entered; if foreclosure was decreed they were to be delivered, otherwise to be returned to their respective makers; that the deed and checks were delivered March 4, after the judgment was entered; that the check for $2,530.53, payable to A. M. Beets, was to satisfy the judgment and costs in the mortgage foreclosure and to pay taxes, and was used for these purposes; that the check for $150 to Beets was for attorney fee, and the $25 check to Beets was for expenses he had incurred in representing the plaintiff; that the other checks to the total amount of $3,794.47 were delivered to plaintiff; that the indorsements on these checks purporting to be the signature of the plaintiff, Laura B. Stone, are in fact her signature.

It is a fair inference from all the testimony in the record that plaintiff suffered and permitted her husband, George W. Stone, to appropriate and abscond with the proceeds of this sale of her land, but this cannot militate against the sufficiency of the evidence to suport defendant's plea of estoppel.

It is therefore concluded that defendant's special plea of estoppel is legally sufficient and is reasonably sustained by the evidence. This conclusion renders it unnecessary to consider further the record of the trial in this case.

. The judgment of the trial court should be in all things affirmed.

By the Court: It is so ordered.