**HELM et al. v. BELVIN et al.**

No. 13523—Opinion Filed June 17, 1924.

Rehearing Denied Jan 7, 1925.

(Syllabus.)

1. **Taxation — Liability of Owner of Life Estate.**

The owner of a life estate in lands, being

in possession and enjoying the rents and profits therefrom, is ordinarily required to pay the general taxes thereon.

### 2. Life Estate — Liability of Owner for Taxes — Payment by Remainderman — Contribution by Other Remaindermen.

Where the owner of a life estate in lands fails to pay taxes due by him upon such lands, and the owner of an undivided interest in the remainder, in order to prevent said lands from being sold for taxes, is compelled to pay the taxes due thereon for the benefit of all, equity, where it is equitable so to do, will enforce contribution against the other owners decreeing to the party thus paying said taxes the right to recover primarily from the owner of the life estate and to subject such life estate to the payment of said monies, and decreeing to such party the further right to recover from the owners of the remainder and a lien upon the title and interest of the remaindermen.

### 3. Same—When Contribution Inequitable— Voluntary Payment.

Where the owner of a life estate in real estate has failed to pay taxes on said land, which it was his duty to pay, and the owner of an undivided interest in the remainder has had a receiver appointed for such life estate in a court of competent jurisdiction for the purpose of subjecting the rents and profits from said lands to the payment of said taxes, and is proceeding to compel the payment of said taxes out of said life estate, and thereupon an owner of another undivided interest in the remainder voluntarily pays said taxes and thereby deprives the plaintiff in such receivership proceedings from being able to subject the life estate to the payment of the taxes due by it, it is not equitable to require the other owners of the remainder to make contribution to the party paying such taxes or to give such party a lien for contribution upon the title of the other remaindermen.

### 4. Appeal and Error—Acquiescence in Judgment—Failure to File Motion for New Trial.

A party defendant, suffering a joint judgment, who files no motion for new trial, acquiesces in judgment against him and cannot urge any alleged trial errors. Knox v. Cruel, 72 Okla. 21, 178 Pac. 91.

Error from District Court, Garvin County; Charles C. Smith, Judge.

Action by Bud Helm and others against James Belvin and others. From the judgment, plaintiffs bring error. Reversed and remanded, with instructions.

Cicero I. Murray, for plaintiffs in error.

Bowling & Farmer, for defendants in error.

LYDICK, J. The land involved in this action is located in Garvin county and was the allotment of Josephine Belvin, a Chickasaw Indian, who died intestate on February 6, 1906. She left surviving her the following heirs, to wit: Chas. A. Belvin, her husband; Elizabeth Belvin (now Helm), a daughter; James Belvin, a son; William Belvin, a son; Arabelle Belvin (now Pollard), a daughter; Stella Belvin (now Green), a daughter; and Rosa Belvin (now Davis), a daughter. Under the law of descent and distribution in force in the Indian Territory at the time of the death of the said allottee, Chas. A. Belvin, the surviving husband, became the owner of a life estate in said land and each of the six children became the owner of an undivided one-sixth interest in said land subject to such life estate. The husband continued to occupy said land and take the rents and profits therefrom until August 17, 1920, when he died intestate. In March, 1911, Arabelle Pollard, nee Belvin, daughter of the allottee above named, died intestate, and shortly thereafter her husband, Roy Pollard, died intestate, leaving their daughter, Bell Pollard, as the sole heir to Arabelle Belvin's interest in said land. On May 7, 1915, Rosa Belvin (now Davis), daughter of the allottee, conveyed her one-sixth interest in said land to one Bud Helm.

This action is one for partition of said lands and was instituted in the district court of Garvin county by Bud Helm and Elizabeth Helm, as plaintiffs, against all other heirs of said allottee, as defendants. James Belvin filed an answer and cross-petition wherein he claimed that in February, 1919, there was due to Garvin county as taxes upon said land the sum of $1,032.28, and that the land was about to be sold for taxes, and that he had paid said taxes out of his own funds to prevent the same being lost to the owners of the land. He claimed he was entitled to be subrogated to the lien of Garvin county upon said land to secure the repayment to him of the monies he had thus paid to Garvin county as taxes thereon. Rosa Davis and her husband, Tom Davis, filed an answer and cross-petition claiming that the deed which they had made to Bud Helm as aforesaid had been obtained by fraud, and they asked a cancellation of that deed. The case was tried to the court without a jury, and the court rendered judgment canceling said deed from Rosa Davis and Tom Davis to Bud Helm as fraudulent and rendered judgment in favor of James Belvin, giving him a lien upon said lands for the taxes which he claimed to have paid as aforesaid, and ordering said land partitioned and sold for the benefit of the respective owners as provided

by law. The plaintiffs, Bud Helm, Elizabeth Helm, and also Stella Green and Bell Pollard, appealed to this court by petition in error with case-made attached.

From an examination of the evidence in the record, we are of the opinion that it is insufficient to support the allegations of fraud, and that the judgment of the court canceling such deed for fraud is clearly contrary to the weight of the evidence, and on said account that portion of the judgment should be reversed. The consideration paid is, at least, reasonably fair under the adverse conditions existing. and little, if any, over-reaching appears. See McDonald, Adm'r. v. Strawn, 78 Okla. 271, 190 Pac. 558; Adam v. Porter, 58 Okla. 225, 158 Pac. 899; Rogers v. Harris, 76 Okla. 215, 184 Pac. 459; Washington v. Morton 90 Okla. 142, 216 Pac. 457; Derdyn v. Low, 94 Okla. 41, 220 Pac. 945.

The plaintiffs in error contend that James Belvin did not pay these taxes, but that he merely loaned the money to his father to pay them. They urge that if it be true that James Belvin did pay these taxes, he did it voluntarily for the purpose of protecting his father in his ownership of the life estate in said land and not under such circumstances as would entitle him to be reimbursed by the other owners of said land or to have a lien thereon in order to obtain such reimbursement.

It is a well-settled and admitted rule of law that it was the duty of Chas. A. Belvin, the owner of the life estate, to pay the taxes on this land. In January, 1919, Chas. A. Belvin was in default in the payment of taxes on said land ever since statehood. Elizabeth Helm, plaintiff in this case, brought a suit in the district court of Garvin county against Chas. A. Belvin alleging his failure to pay these taxes and sought the appointment of a receiver on that ground to take possession of the land and make the amount of said taxes out of said life estate. In that action and on January 30, 1919, the district court did appoint a receiver "with authority to take landlord possession" of such real estate and to rent out the same and out of the rents and profits to pay such taxes. Thereupon James Belvin, by mortgaging certain other lands which he owned individually, borrowed the sum of $1,200 for the purpose of furnishing the money out of which such taxes could be paid. The taxes were paid on February 14, 1919. just two weeks after the making of the order for the appointment of this receiver who was to take possession of the land and make the taxes out of the rentals of said life estate. The

tax receipts are in evidence and upon their face show the taxes to have been paid by Chas. Belvin, the owner of the life estate. and do not show that the same were paid by James Belvin. This effectively destroyed and ended the receivership proceedings because such proceedings were instituted solely for the purpose of causing the taxes on said land to be paid. Chas. Belvin, the owner. was thereby enabled to continue to possess said land and enjoy the life estate, getting the use, rents, and profits therefrom until his death the following year.

On the witness stand James Belvin was asked to "state to the court how you came to pay the taxes." His answer was. "My father said that he did not have the money to pay them with, and taken a mortgage on my place to pay it and save the land." He was asked, "Did you pay the money to the county treasurer as is shown by these certificates"? He answered. "I don't know whether I paid it or Mr. Nesbitt paid it over." Mr. Nesbitt was the man from whom he obtained the farm loan.

Under the evidence in the case, we are of the opinion that the money with which these taxes were paid was furnished by James Belvin either as a mere loan to his father or as an advancement and favor to his father to enable his father to avoid giving up his life estate into the hands of the receiver which had been appointed and to enable his father to maintain such life estate as his home rather than to surrender it to a receiver for the period of years likely necessary to enable the receiver to collect sufficient rents and profits from the life estate to pay all of said back taxes.

In 13 C. J., page 828, the author says:

"Where land is charged with a burden, each part should bear no more than its due proportion of the charge, and where the owner of any part of such land is compelled to pay more than his proportion of the charge, equity will enforce contribution against the owners of the other parts. However, in such a case the equities of the parties must be equal, and the one paying and discharging the charge, lien, or incumbrance must do so for the benefit of all. The doctrine of contribution does not apply where the one making the payment does so to protect an independent interest or to satisfy a primary liability on his part."

But in applying the rule above stated we must consider the law as set out in 21 C. J., at page 955, section 10, where the author says:

"A life tenant, in possession, enjoying the rents and profits, and those succeeding to

his estate must pay all the ordinary taxes on the property during the continuance of his life estate, unless there is some agreement, or some provision in the instrument creating the estate, relieving him of this liability; and in the case of his failure to do so, a receiver may be appointed to collect the rents and income and apply them to this purpose, or the remainderman may pay the taxes and recover the amount from the life tenant, and a lien may be declared upon the interest of the life tenant in favor of the remainderman for the amount which the latter has had to pay."

If the evidence be sufficient to support a finding by the court that James Belvin did not intend the money advanced for the payment of taxes to be a mere loan or gift to his father for that purpose, the evidence will yet remain insufficient to entitle James Belvin, as against these plaintiffs, to be subrogated to the lien of Garvin county upon the lands for reimbursement to him of the moneys thus paid out or to otherwise subject the interest of his cotenants in said land to a lien to secure the monies which he thus advanced. To support this claim of James Belvin, it must appear that the payment was not a voluntary one, but was absolutely necessary in order to prevent the title to said lands from being sold and thereby lost to the owners thereof. This is a suit in equity, and equity will not extend its helping hand to him who has not done equity toward the adverse parties in the suit. Elizabeth Helm owned the same interest in this land as was owned by James Belvin, and she had the right to demand that Chas. Belvin pay these taxes and had the right to compel the payment of these taxes out of Chas. Belvin's life estate. She waited ten years for him to do so, and then proceeded in court in an effective manner to have the same done. Just after she had succeeded in having this life estate seized by the law, so that her rights in said land could be protected by compelling the payment of these taxes out of the life estate, then James Belvin himself voluntarily produced the money out of which the taxes were paid. This necessarily ended the receivership. By this voluntary payment James Belvin destroyed all rights and remedies by which Elizabeth Helm could further proceed to subject the life estate of Chas. Belvin to the payment of these taxes as the law provided. James Belvin himself made no effort to recover these advanced moneys out of this life estate or to otherwise collect the same from Chas. Belvin in his lifetime. Until then he asserted no lien upon the life estate or the remainder, nor any claim against his cotenants for reimbursement of the sums advanced. Having protected Chas. Belvin and his estate from the cause of action then rightfully pressed by Elizabeth Helm in the receivership suit, James Belvin seemed content, during his father's lifetime and until the filing of this suit in partition long thereafter. James Belvin had the right and is to be commended in aiding his father in holding his life estate, but he must be generous and charitable only with his own funds and not by the sacrifice of the rights of his sister. The lands had a substantial rental value. Chas. Belvin lived but a little less than two years after these taxes were paid, and the rents which could have been recovered from the lands during that time would have been insufficient to pay all the back taxes. Under the law, the life estate itself was subject to the payment of the taxes, and had one of the cotenants and joint owners of the remainder been required to pay the taxes to prevent the lands from being sold, he would have had a lien upon the life estate itself and could have sold the life estate under his lien for reimbursement. If James Belvin would otherwise be entitled to a lien upon the plaintiff's interest in this land to secure the repayment to him of the monies advanced for taxes, his voluntary payment of the taxes in such time and manner as to deprive his cotenants of the right to subject the life estate to a contribution of these tax monies made his actions inequitable toward his cotenants. Equity will not decree inequity. Judgment must go against James Belvin under the rule that he who seeks equity must do equity. If James Belvin, under these circumstances, can have a lien upon this land for reimbursement, then any tenant in common of land subject to a life estate can voluntarily pay the taxes during the entire life of the owner of the life estate and thereby often confiscate the interests of his covenants at the time of the death of the owner of the life estate, and this he would be able to do in such manner that his cotenants, neither during the life of the owner of the life estate nor after his death, would be able to protect their interests.

Stella Green and Bell Pollard joined with Bud Helm and Elizabeth Helm in the petition in error filed in this court and in the appeal generally. From an examination of the record it appears that Bud Helm and Elizabeth Helm filed their motion for new trial in the lower court, which was overruled and exceptions duly saved by them, but the record discloses that Stella Green and Bell Pollard did not file any such motion for new trial. It is necessary to examine the evi-

dence in this case on appeal in order to grant any relief to the plaintiffs in error, and without the filing of a motion for new trial in this case, the errors which we have declared to exist in the proceedings in the lower court in this case cannot be corrected by this court on appeal.

In the case of Knox v. Cruel, 72 Okla. 21, 178 Pac. 91, the court says in section 2 of the syllabus:

"A party defendant, suffering a joint judgment, who files no motion for new trial, acquiesces in judgment against him and cannot urge any alleged trial errors."

The judgment of the lower court is, therefore, reversed. We are of the opinion that under all the circumstances in this case, no sufficient material new matter could be presented in a new trial to justify the cost and expense incident thereto, and that the ends of justice would be best subserved by ending here this family quarrel over comparatively small matters. The cause is remanded to the lower court, with instructions to modify said judgment so as to deny to James Belvin any lien upon the interest of Bud Helm and Elizabeth Helm in and to the lands involved in this action to secure the reimbursement or repayment unto the said James Belvin of any monies furnished by him to pay taxes upon said land or to otherwise recover any part of said monies from Bud Helm and Elizabeth Helm. The lower court is further instructed to render judgment declaring valid the deed given by Rosa Davis and Tom Davis unto Bud Helm and to quiet the title of Bud Helm against all the other parties to this action as to his one-sixth interest in said lands conveyed by said deed. The court shall by proper judgment, adjudge, order, and decree the partition of said lands, as provided by statute, among the owners of said lands consistent with this opinion.

JOHNSON, C. J., and NICHOLSON, HARRISON, BRANSON, WARREN, and GORDON, JJ., concur.