**A. W. LOHMANN, III, and Charles Lohmann, Appellants,**

**v.**

**Dorothy Glynn ADAMS et al., Appellees.**

**No. 47088.**

Supreme Court of Oklahoma.

June 3, 1975.

Rehearing Denied Sept. 30, 1975.

T. F. Dukes, Hominy, for appellants.

Brewer, Worten & Robinett, Bartlesville, for appellees.

IRWIN, Justice:

Appellants, A. W. Lohman, III and Charles Lohman, commenced proceedings on February 20, 1973, to cancel deeds, recover possession, secure rents and to quiet title to a 200 acre tract that had been sold and conveyed to appellee, K. S. Adams. The other appellees are nominal parties. Adams answered and then moved for judgment on the pleadings and admitted facts. The trial court rendered judgment for Adams under Rule 13, Rules for District Courts, 12 O.S.Supp.1973, Ch. 2–App. The Court of Appeals, Division No. 1 reversed the trial court. Adams seeks certiorari.

Adams died after the petition for certiorari was filed. By order of this Court on May 30, 1975, Dorothy Glynn Adams, Stephen Stanley Adams, Kenneth Glen Adams, Gary Clark Adams, and First National Bank in Bartlesville, as Co-Executors of the Estate of K. S. Adams, deceased, were substituted for Adams, as appellee.

The 200 acre tract (Elm Creek) was originally owned by A. H. Lohman (Grandfather), appellants' grandfather. Grandfather left this property by will to three of his sons (Uncles), appellants' uncles. On April 24, 1948, after Grandfather's death but before probate of his will, Uncles made a contract with Grandfather's fourth son (Father), appellants' father, to convey Elm Creek to Father with a restriction against alienation during his lifetime and to convey the remainder to appellants

(Sons) "with like restrictions against alienation by them, or either of them, until May 8, 1970." This contract was made a part of Grandfather's will and incorporated therein when probated.

On July 22, 1948, Uncles deeded Elm Creek to Father for "his natural life" and upon his death, the remainder to Sons. Father was restrained from alienating the property during his lifetime. This deed also restrained Sons from alienating the property before January 1, 1970, (the contract said May 8, 1970).

The Uncles' deed contained "forfeiture" clauses not contained in the contract. The clauses provided that upon any attempt to alienate the property by Father, his estate would terminate and the remainder would vest immediately in Sons. In the event Sons attempted to alienate the property before January 1, 1970, the estate of Sons would terminate and the title would revert to Uncles, or their heirs, devisees, successors or assigns.

The order approving the final report of executors and distributing the assets of Grandfather's estate was filed on April 3, 1950.

On Februrary 21, 1955, Sons, then 17 and 20 years old, were granted rights of majority by the district court, Kay County. On the same day, Father conveyed his interest in Elm Creek by warranty deed to Sons. The following day Sons conveyed by warranty deed to Uncles, who in turn, conveyed to Adams by warranty deed. Adams took possession of Elm Creek on March 31, 1955 and had been in possession ever since.

Father died November 14, 1956.

The trial court quieted title in Elm Creek in Adams and dismissed Sons' claim for money judgment.

On appeal, Sons alleged, inter alia:

(1) The property in question was inalienable under the terms of the contract, until May 8, 1970. Therefore, the deed to Adams in 1955 was illegal and void because it violated the alienation provision of the probated contract;

(2) The contract between Uncles and Father controls the deed executed in 1948 by Uncles to Father. Therefore, the forfeiture clause put in the deed by Uncles should be non-effective and not binding upon Father or Sons;

(3) Property in Oklahoma can be made "nonalienable" under 60 O.S.1971 § 31 and § 35; and,

(4) The trial court erred in granting judgment to Adams under Rule 13.

The Court of Appeals held that the terms of the contract were controlling and found the contract provisions appeared to be a disabling type of restraint. The court said that if the purpose of the contract was to disable appellants from alienating the property until May 8, 1970, their 1955 deed to Uncles would be null and void; the defense of estoppel by deed would not be available; and the statute of limitations would not start to run until May 8, 1970. The Court of Appeals reversed the judgment of the trial court and remanded the case to determine the purpose of the restraint provisions in the contract.

Sons argue that real property in Oklahoma can be made "nonalienable" under 60 O.S.1971 § 31 and § 35.

Section 31 has been part of Oklahoma Statutes since 1910 and provides:

"The absolute power of alienation cannot be suspended, by any limitation or condition whatever, for a longer period than during the continuance of the lives of persons in being at the creation of the limitation or condition * * *."

The above section is a prohibition against the suspension of the absolute power of alienation as therein prescribed and is not applicable here. We are concerned here with the validity of restraints on alienation and § 31 cannot be construed to mean that any and all restraints on alienation are valid if such restraints are not "for a longer period than during the con-

tinuance of the lives of persons in being at the creation of the limitation or condition."

Section 35, supra, inter alia, provides:

" * * * a remainder of a freehold or an estate for years, either contingent or vested may be created, expectant on the termination of a term of years; * * *."

This section is not applicable. The validity of Father's life estate and Sons' remainder in the case at bar is not in issue. The issues presented concerns the restraints on alienation imposed on those estates and not the validity of their creation.

Appellants also contend that *Waldon v. Baker,* 184 Okl. 492, 88 P.2d 352 (1939), holds that the power of alienation may be suspended and relies on this language: "A remainder in fee limited to the children of the heirs of the life tenant's body, though such heirs be unborn at the time of the grant, is recognized by statute as a valid grant. § 11766, O.S.1931." [now 60 O.S. 1971 § 41]. Again, we are not concerned with the validity of the creation of the estates but are concerned with the restraints on alienation imposed upon those estates.

Without determining whether the contract or the deed is controlling, we will address the issues raised by the restraints on alienation imposed by the contract and also by the deed.

A restraint on alienation attempts to make vested interests, present or future, inalienable. These attempts have taken two general forms. 6 Amer.Law of Prop. § 26.2; Mee, Estates in Land: The Rule Against Perpetuities in Oklahoma, 17 Okla.L.Rev. 438 (1964). One form of restraint is a "disabling restraint" which withholds from the conveyee the right or power to alienate. If valid, an attempt by the conveyee to alienate the property in violation of the restraint would be null and void. If void, the restraint would be rejected and the conveyee could alienate the property in violation of the void restraint.

The other form of restraint is a "forfeiture restraint" which consists of a provi-

sion in the conveyance whereby an attempted alienation shall cause a forfeiture of the conveyee's interest. If valid, an attempted conveyance of the property by the conveyee in violation of the restraint would be void, but the forfeiture provision would be operative and the conveyee's interest would be terminated. If void, the conveyee could validly alienate the property in violation of the void restraint without a forfeiture of his interest.

We will first consider the validity of the restraints in the April 24, 1948, contract. Father was restrained from alienating his life estate and Sons were restrained from alienating their remainder, or the fee upon Father's death, until May 8, 1970. Because there are no provisions for forfeiture or reversion and no one having any beneficial interest in enforcing the restraints, we hold them to be "disabling restraints".

According to the Restatement of the Law of Property, § 404(1)(a) (1944), a "disabling Restraint" is a restraint upon alienation which is an attempt "by otherwise effective conveyance or contract to cause a later conveyance to be void."

The Restatement of the Law of Property § 405, states:

"All restraints on alienation run counter to the policy of freedom of alienation so that to be upheld they must in some way be justified. But disabling restraints have an additional objection to their validity since to be effective they must enable the person restrained to deny the validity of his own conveyance and also, * * * to deny his creditors resort to the property interests which he is enjoying."

The position of the Restatement of the Law of Property is that all "disabling restraints, other than those imposed on equitable interests under a trust, are invalid." § 405.

In effect, a disabling restraint is a naked restraint attempted in terms of a prohibition or withholding of right or power to alienate. This method of restraint does not provide for a forfeiture of the proper-

ty in the event of alienation. As a result disabling restraint provisions have been held void because there remains no one who has any beneficial interest in their enforcement which is not the case with forfeiture restraints. 42 ALR2d 1247–1250. Further, if held valid, a disabling restraint would allow the person restrained to deny the validity of his own conveyance [what Sons are attempting here].

The Supreme Court of Kansas in *Superior Oil Co. v. Johnson*, 161 Kan. 710, 171 P.2d 658 (1948), recognized the power of a grantor or testator to place reasonable restrictions for limited periods upon the right of his grantee or devisee to alienate the property granted or devised, but said a mere admonitory gesture in a deed or will is insufficient to do so. The Court held:

"A restrictive provision in the nature of a restraint on alienation of land is ineffective and invalid unless the provision is accompanied by enforceable provisions for forfeiture or other consequences for its breach."

This Court has never labeled a restraint on alienation as a "disabling restraint" but the form of restraint attempted in *Stone v. Easter*, 93 Okl. 68, 219 P. 653 (1923), was the disabling form. It reads as follows:

"Except provided that said second party shall not sell, transfer, or alienate said premises until she has attained the age of forty (40) years."

In Stone the grantor had conveyed an absolute fee by warranty deed, and we held:

"A warranty deed in statutory form by apt language conveys an absolute fee, and this estate is incompatible with a lesser power over it than that of complete possession, enjoyment, and right of disposition. Such an intention being manifest from the language of a warranty deed, any clause inserted therein in restraint of alienation is subordinate to this intention of the grantor as manifested by the language of the conveyance, and, being subordinate and wholly inconsistent therewith, is inoperative."

■ Although in Stone we were considering an absolute fee conveyed by warranty deed we can see no legal reason why the holding in Stone would not be applicable in the case at bar. Here the Uncles contracted to execute a sufficient deed conveying a life estate to Father with the remainder to Sons. Under the contract Uncles did not retain any interest in the property but a restraint on alienation until May, 1970, was placed on Elm Creek. A contract in restraint of alienation is no more valid than a disabling restraint in a deed. No greater validity may be given to the restraint by construing it to create a covenant. Rest., Contracts. §§ 514, 515(d), and § 598. Therefore, we hold the disabling restraint created by the contract to have the same force and effect as if it had been in a deed.

■ We hold that the restraints on alienation imposed by the contract are void. Consequently, the restraints would not preclude either Father or Sons from conveying their interest in Elm Creek. If the terms of the contract are controlling, as Sons contend, we hold the conveyances by Father and Sons are valid and the trial court should be affirmed.

We now consider the restraints on alienation contained in the deed from Uncles to Father. Under the "forfeiture restraints" of the deed, if Father attempted to alienate his life estate, his interest would terminate and the remainder would vest immediately in Sons. If Sons attempted to alienate their interest prior to January 1, 1970, their interest would terminate and title would revert to Uncles, their heirs, devisees, successors or assigns.

Oklahoma has not described such restraints as being "forfeiture restraints" but this form of restraint as herein defined, was considered in *Crookum v. Ketchum*, 174 Okl. 468, 50 P.2d 710 (1935). The warranty deed, absolute in form, in Crookum contained this clause:

"Provided, the land described herein shall not be sold, or in any way encumbered for the period of 15 years from

this date, and in case any attempt to sell or in any way encumber, or suffer the same to be done, the title shall revert to the grantor or his heirs and assigns."

The issue in Crookum was not whether the title would revert to grantor in case the grantee violated the restraints imposed, but whether the grantee could encumber the property. Citing Stone, supra, with approval, we held the grantee could encumber the property because the restraint clause was inoperative.

■ In the instant case, whether the forfeiture restraints imposed by the deed are valid or invalid, the results will be the same. If the restraint on alienation imposed on Father's life estate is void, Sons acquired fee simple title by warranty deed from Father. If the restraint is valid, the forfeiture provision was operative and Father's interest terminated and vested in Sons immediately upon his attempted alienation. Whether Sons acquired Father's interest by deed or by forfeiture, they had fee simple title which they conveyed to Uncles by warranty deed.

If the restraint on alienation imposed on Sons' interest by the 1948 deed is void, the conveyance by Sons to Uncles would be valid. If the restraint is valid, Sons' interest in the property terminated and title reverted to Uncles when Sons attempted to convey to Uncles. Whether Uncles acquired Sons' interest by deed or by forfeiture, they had fee simple title which they conveyed by warranty deed to Adams.

Concisely, if the forfeiture restraints in the deed are valid the attempted conveyances from Father to Sons to Uncles had the net effect of merging the fee in Uncles prior to their conveyance to Adams through the operation of the forfeiture provisions. If invalid, the fee was merged when Father conveyed his life estate to remainderman, Sons, who conveyed to Uncles. In either case, Adams received the absolute fee by warranty deed from Uncles. We hold therefore, that if the terms of the 1948 deed are controlling, Uncles acquired the interest Sons had in Elm Creek whether the restraints on alienation contained in the deed were valid or void.

Consequently, whether the restraints on alienation in the contract or deed controlled, Uncles had fee simple title to the property when they conveyed by warranty deed to Adams.

■ In our opinion today, we have held "disabling restraints" as herein defined to be void. One objection raised to this form of restraint is that no one has any beneficial interest in its enforcement except the person restrained, which is not the case with "forfeiture restraints". However, a determination of the validity of the "forfeiture restraints" imposed by the deed was not necessary to dispose of this case. Therefore, this opinion should not be construed as holding that "forfeiture restraints" are necessarily a valid form of restraint. In any given case consideration would have to be given to the justifications for the restraint and the nature of the estate restrained. Crookum v. Ketchum, supra; Rest.Prop. § 409; 6 Amer.Law of Prop. § 26.19, 26.50; 42 A.L.R.2d 1247–51; 160 A.L.R. 633.

Sons further contend that the trial court erred in rendering judgment for Adams under Rule 13, applicable when "it appears that there is no substantial controversy as to any material fact and that any party is entitled to judgment as a matter of law." We cannot agree. No substantial controversy exists concerning the material facts, either in the pleadings or in the facts admitted. Any trial involving the issues raised by Sons' petition would be useless. Poafpybitty v. Skelly Oil Company, Okl., 517 P.2d 432 (1973).

Certiorari granted; Decision of the Court of Appeals reversed; and Judgment of the trial court affirmed.

WILLIAMS, C. J., HODGES, V. C. J., and BERRY, BARNES and SIMMS, JJ., concur.

DAVISON, LAVENDER and DOOLIN, JJ., concur in result.