2011 OK CIV APP 107

**Sherry Lee SORRELS,**
**Plaintiff/Appellant,**

**v.**

**Gary Fred TECH, Individually and as Trustee of the Amended and Restated Fred Tech Trust, Janis Tech and The Unknown Heirs, Executors, Devisees, Trustees, Personal Representatives, Assigns and Successors of Janis Tech and Fred Tech, Defendants/Appellees.**

No. 108,624.

Court of Civil Appeals of Oklahoma, Division No. 2.

June 3, 2011.

R. Stephen Haynes, Law Offices of R. Stephen Haynes, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant.

Robert W. Nelson, Chad E. Ihrig, Nelson, Roselius, Terry & Morton, Oklahoma City, Oklahoma, for Defendants/Appellees.

JOHN F. FISCHER, Vice Chief Judge.

¶1 Plaintiff Sherry Lee Sorrels appeals the district court's order granting defendant Janis Tech's[1] motion for summary judgment. The appeal has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36(b), 12 O.S. Supp.2009, ch. 15, app. 1, and the matter stands submitted without appellate briefing. Because it is undisputed that Sorrels signed an agreement assuming responsibility for obtaining insurance coverage on certain real property, she cannot maintain an action against Janis Tech related to that subject, and the judgment of the district court is affirmed.

## BACKGROUND

¶2 Sorrels is the daughter and one of three children of Fred Tech, who died in 2003. Janis and Fred Tech were married at the time of his death. Pursuant to the Fred Tech Trust, Sorrels is the distributee of approximately 140 acres and improvements thereon previously owned by her father, the SW ¼ of Section 8, Township 14 North, Range 9 West, in Canadian County, Oklahoma (the Property). However, paragraph 4.1 of the trust instrument provided that not more than five acres of the Property, including Fred Tech's former residence, would be subject to Janis Tech's "rights to occupy such residence" and "to continue to reside in such residence so long as she desires, provided, she shall be responsible for the expenses of normal upkeep and maintenance of the residence" until her abandonment of the residence or death. The same paragraph allocated payment of the ad valorem taxes on the Property to Sorrels.

¶3 From the record, it appears that there was controversy involved in settling Fred Tech's estate and distributing the property subject to the Fred Tech Trust. Primarily, this controversy appears to have involved Sorrels and her two brothers, each of whom also received a distribution of real property pursuant to the Trust. During this controversy, the trustee executed a quit claim deed in favor of Janis Tech conveying her interest in the residence. The parties to the deed were the trustee on behalf of the Trust and Janis Tech. That deed provided that on her death or abandonment of the residence, all of Janis Tech's rights in the Property would terminate and that Sorrels would then "hold

1. The district court's Journal Entry of Judgment lists "Janis" Tech as a party defendant. We note that other documents of record spell her name "Janice" Tech. We will use the first name Janis.

and own such property free and clear of any claim to use or benefit thereof" by Janis Tech. The deed also contains the following language: "Party of the Second Part [Janis Tech] during the time she occupies and uses said premises shall be responsible for the expense of normal upkeep and maintenance of the residence, however, the distributee [Sorrels] ... shall be responsible for payment of ad valorem taxes on the property with the Party of the Second Part and the distributee to each be responsible for insuring their respective interest in the premises and the improvements thereon." The deed is dated July 23, 2003, and was recorded with the Canadian County Clerk two days later.

¶ 4 Ultimately, the parties were able to resolve their differences and executed an Agreement dated May 19, 2004. The Agreement incorporated the terms of the quit claim deed. Sorrels, her two brothers and Janis Tech are the signatories to the Agreement, which recites that its purpose is to memorialize these parties' agreement "with respect to distribution of assets of the Fred Tech Trust and termination (winding up of the affairs) of said Trust." Ten days later, a tornado destroyed the residence.

¶ 5 During the time that she occupied the residence, Janis Tech maintained the insurance policy in effect at Fred Tech's death. The proceeds of the insurance policy in effect at the time the residence was destroyed were paid to Janis Tech. Subsequent to the May 29 tornado, Janis Tech abandoned the residence and disclaimed any further interest in the Property. Sorrels maintained a successful action to quiet title to the Property distributed to her pursuant to the Fred Tech Trust.[2] In that action, Sorrels also sought to recover the insurance proceeds paid to Janis Tech and the difference between that amount and the actual value of the residence and related buildings. As to this claim, Janis Tech filed a motion for summary judgment. The order sustaining that motion is the subject of this appeal.

### STANDARD OF REVIEW

¶ 6 Rule 13 of the Rules for District Courts of Oklahoma, 12 O.S. Supp.2009, ch. 2, app., governs the procedure for summary judgment in the district court. We review the district court's grant of summary judgment *de novo*. *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. On review, we examine the pleadings and evidentiary materials submitted by the parties to determine whether there exists a genuine issue of material fact. *Id.* This Court bears "an affirmative duty to test all evidentiary material tendered in summary process for its legal sufficiency to support the relief sought by the movant." *Copeland v. The Lodge Enters., Inc.,* 2000 OK 36, ¶ 8, 4 P.3d 695, 699. "Only if the court should conclude that there is no material fact in dispute and the law favors the movant's claim or liability-defeating defense is the moving party entitled to summary judgment in its favor." *Id.*

### ANALYSIS

¶ 7 The summary judgment pleadings establish the following undisputed facts material to Janis Tech's motion for summary judgment:

1. Pursuant to the Fred Tech Trust, Sorrels became the owner of the Property subject to Janis Tech's right to occupy the residence until her death or abandonment of the residence on the death of Fred Tech.

2. Fred Tech died on March 13, 2003.

3. On July 23, 2003, the trustee of the Fred Tech Trust executed a quit claim deed conveying to Janis Tech her interest in the Property pursuant to the terms of the Trust.

4. The quit claim deed was properly recorded with the Canadian County Clerk on July 25, 2003.

5. The quit claim deed provided that Janis Tech and Sorrels would "each be responsible for insuring their respective interest in the [Property] and the improvements thereon."

6. After various disputes regarding distribution of the Trust assets, Janis Tech,

**2.** That suit also named one of Sorrels' brothers, who was the trustee of the Fred Tech Trust, and involved other claims not relevant to the disposition of this appeal.

Sorrels and the other Trust distributees signed an Agreement dated May 19, 2004, providing for the distribution of Trust assets.

7. The Agreement incorporated the terms and conditions of the quit claim deed.

8. The Agreement distributed the Property to Sorrels "subject to the terms and conditions of Section 4.1 ... of the Fred Tech Trust, and all provisions of the Quit Claim Deed" to Janis Tech.

9. One term of the quit claim deed required Sorrels to be responsible for insuring her interest in the "premises and the improvements" covered by the deed.

10. Janis Tech maintained an insurance policy on the residence covered by the quit claim deed.

11. Sorrels did not insure her interest in the Property.

12. The residence and related buildings located on the Property were destroyed by a tornado on May 29, 2004.

13. Janis Tech did not represent to Sorrels that she had obtained full coverage insurance on the residence and related buildings.

## I. The Quit Claim Deed

■ ¶ 8 First, Sorrels argues that Janis Tech acquired no estate in the Property but only a personal right to occupy the Property until she died or abandoned that right. *Kemp v. Turnbull,* 1946 OK 277, 174 P.2d 384, relied on by Sorrels for this argument, discussed a "probate homestead" created by operation of law pursuant to statute. The statute provides: "Upon the death of either husband or wife, the survivor may continue to possess and occupy the whole homestead...." 58 O.S.2001 § 311. The Court held that a probate homestead was not an estate in land and was not alienable, unlike a life estate devised to a surviving spouse by will. The Court also distinguished the pro-

bate estate from the life estate devised to the wife pursuant to her husband's will. Here we deal with the latter, and *Kemp* is not dispositive.[3]

¶ 9 As a matter of real property law, Janis Tech acquired a life estate pursuant to paragraph 4.1 of the Trust. *See Lohmann v. Adams,* 1975 OK 86, 540 P.2d 552 (conveyance to father for his natural life with the remainder to his sons created a valid life estate in the father and a valid remainder interest in the sons). Janis Tech's life estate was subject to forfeiture if she abandoned or chose not to occupy the Property. *See Berry v. Cooley,* 1940 OK 473, ¶ 33, 109 P.2d 1081, 1086 (finding valid a provision granting wife a life estate so long as she did not remarry). This type of forfeiture provision was distinguished from a "disabling restraint" in *Lohmann,* 1975 OK 86, ¶¶ 22–23, 540 P.2d at 555. There, the Court held that disabling restraints contained in instruments creating a life estate and remainder were invalid as impermissibly preventing alienation of a freehold estate. The Court did not decide whether forfeiture restraints were likewise invalid because: "In any given case consideration would have to be given to the justifications for the restraint and the nature of the estate restrained." *Id.* ¶ 40, 540 P.2d at 557. No Oklahoma case has addressed the validity of a conditional limitation on a life estate requiring occupancy of the estate. However, other jurisdictions have enforced such provisions. *See Bradford v. Culbreth,* 18 A.2d 143 (Del.1941); *Conger v. Lowe,* 124 Ind. 368, 24 N.E. 889 (1890); *Lowe v. Cloud,* 45 Ga. 481 (Ga.1872). We find that a provision limiting a life estate to a period of time while occupied by the life tenant is valid, enforceable and conveys a freehold estate.[4]

■ ¶ 10 Sorrels derived from the Trust a remainder interest in the Property subject to Janis Tech's life estate. "When a future estate, other than a reversion, is dependent on a precedent estate, it may be called a

---

3. Further, there is nothing in this record to show that the Property was the homestead of Fred and Janis Tech or, if it was, why Janis Tech would be limited to only five acres of the homestead rather than her statutory right to occupy the entire 160 acres on which the Property was located.

4. Estates for life are freehold estates. 60 O.S. 2001 § 26

remainder, and may be created and transferred by that name." 60 O.S.2001 § 30. The holder of a remainder interest does not have a right to possession until termination of the precedent estate. *Beatty v. Miley,* 1951 OK 184, ¶ 36, 233 P.2d 269, 275. *See* 60 O.S.2001 § 28 ("A future estate may be limited by the act of the party to commence in possession ... on the termination ... of a precedent estate, created at the same time."). However, because Sorrels had a right to immediate possession on termination of Janis Tech's life estate, Sorrels did have a vested and insurable interest in the Property.

> Where a party holds land by deed reserving a life estate in grantors, he has an insurable interest on improvements thereon, and insures against loss by fire, paying premium from his own funds, and loss occurs, in the absence of a contrary agreement, he is entitled to the proceeds of such insurance....

*Girdner v. Girdner,* 1959 OK 50, ¶ 0, 337 P.2d 741, 742 (Syllabus 1) (holding that the owner of a remainder subject to a life estate was entitled to insurance proceeds from a policy for which he paid when fire destroyed a building on the property).

¶ 11 Sorrels' argument that she did not have an insurable interest in the property is contrary to law. Further, in this case, not only is there an "absence of a contrary agreement," but also there is an express agreement that Sorrels will be responsible for insuring her interest in the Property. Although Sorrels advances several arguments in an attempt to avoid the consequences of these facts, it is clear that Sorrels undertook the responsibility for insuring her interest in the Property.

¶ 12 First, even though she was not a party to the quit claim deed, Sorrels was charged with knowledge of its contents after it was recorded. *See* 16 O.S.2001 § 15 (Conveyances) ("[N]o deed, mortgage, contract, bond, lease, or other instrument relating to real estate ... shall be valid as against third persons unless acknowledged and recorded as herein provided."). "Every conveyance of real property acknowledged or approved, certified and recorded as prescribed by law from the time it is filed with the register of deeds for record is constructive notice of the contents thereof to subsequent purchasers, mortgagees, encumbrancers or creditors." 16 O.S.2001 § 16. Sorrels acquired her interest in the Property after the deed to Janis Tech. "When a remainder on an estate for life ... is not limited on a contingency defeating or avoiding such precedent estate, it is to be deemed intended to take effect only on the death of the first taker...." 60 O.S. 2001 § 42. Sorrels' remainder interest may have vested at Fred Tech's death, but she had no right to possession of the Property until termination of the life estate. Consequently, Sorrels was charged with constructive knowledge of the terms of the quit claim deed.

¶ 13 In this case, not only did Sorrels have constructive knowledge of the terms of the quit claim deed, but also she had actual knowledge as well. In paragraph 4 of the May 19 Agreement, Sorrels acknowledged that she had received a copy of the quit claim deed. Further, Janis Tech's interest, as described in the quit claim deed, was not burdened by the customary obligation of a life tenant to pay taxes on the property. *See Helm v. Belvin,* 1924 OK 628, ¶ 0, 232 P. 382, 382; 60 O.S.2001 § 69 ("The owner of a life estate must keep the buildings and fences in repair from ordinary waste, and must pay the taxes and other annual charges, and a just proportion of extraordinary assessments benefiting the whole inheritance."). Pursuant to the terms of the Trust, Sorrels was required to pay the ad valorem taxes, and that is reflected in the language of the deed. Likewise, the quit claim deed clearly provides that Janis Tech was not responsible for insuring Sorrels' interest in the Property. Title 16 O.S.2001 § 53(A) provides:

> A recorded signed document relating to title to real estate creates a rebuttable presumption with respect to the title that:
>
> ....
>
> 10. Recitals and other statements of fact in a conveyance are true if the matter stated was relevant to the purpose of the document....

There is no evidence in this record to show that Sorrels objected to the insurance provision or sought a correction deed requiring

Janis Tech to insure Sorrels' remainder interest.[5] Therefore, Sorrels is bound by the terms of the quit claim deed including the provision requiring her to insure her separate interest in the Property.

## II. The Agreement

¶ 14 Sorrels was required to insure her interest in the Property not only by operation of law, but also because she specifically agreed to do so. The May 19 Agreement memorializes Sorrels' agreement with the other three beneficiaries of the Fred Tech Trust regarding distribution of the Trust assets. Paragraph 4 of the Agreement states that Janis Tech's interest in the Property has already been distributed to her pursuant to the quit claim deed, and specifically incorporates the terms and conditions of the quit claim deed. One provision of the quit claim deed states that Janis Tech and Sorrels will "each be responsible for insuring their respective interest" in the Property. Paragraph 8 of the Agreement distributes to Sorrels her remainder interest in the Property "subject to the terms and conditions of Section 4.1 ... of the Fred Tech Trust, and all provisions of said Quit Claim Deed." Although Sorrels asserted in her summary judgment response that "the quit claim deed of July 15, 2003, does not state that [Sorrels] will provide insurance on the subject property," that assertion is true only to the extent that the quit claim deed does not require Sorrels to insure Janis Tech's interest, and it leaves to Sorrels the choice of whether to insure her own interest. Either interpretation fails to advance Sorrels' argument that Janis Tech was required to insure Sorrels' remainder interest in the Property. Consequently, Sorrels has failed to establish any material factual dispute regarding the terms of the Agreement or the requirement that she insure her interest in the Property.

## III. Sorrels' Arguments

¶ 15 To avoid the express language of the Agreement and quit claim deed, Sorrels makes two arguments: (1) the parties agreed Janis Tech would insure Sorrels' interest in the Property; and (2) Sorrels' acceptance of the terms of the Agreement was subject to and reserved her claim for insurance and damages. To support these arguments, Sorrels relies on a series of letters between her counsel and attorney James Bass.[6] Sorrels' counsel wrote to Bass on February 17, 2004, regarding various issues, including insurance.

> In regard to the Fred Tech homestead, a surveyed designation should be made of the five acres in which Janis Tech will have a life estate. Further, clarification needs to be made regarding the identification, care, maintenance and insuring of the improvements thereon. No provision is made for the insuring of the house, barns, grain bins and other out buildings nor have the improvements been adequately described. We believe that the insuring of the property constitutes normal upkeep and maintenance of the property and Sherry Sorrels should be made the loss-payee on such policy. If the residence is destroyed or substantially damaged, Sherry should be under no obligation to rebuild.

Paragraph 5 of attorney Bass's response on February 20, 2004, states:

> I believe that the general law in Oklahoma requires a life tenant (or a term tenant) maintain the property in a reasonable condition during the term of such tenancy, and that in addition the life tenant (or term tenant) must during such term of occupancy and use maintain adequate fire and extended coverage insurance with respect to the improvements, and pay ad valorem taxes becoming due with respect to such property during the term. The remainderman should be named a loss-payee with respect to the fire and extend-

---

**5.** We recognize, as discussed in Part III of this Opinion, that Sorrels' counsel pursued the insurance issue and communicated with counsel for the trustee on several occasions regarding this issue. In none of that correspondence, however, is there any reference to the insurance provision in the quit claim deed or any request to issue a corrected deed reflecting that Janis Tech was required to insure Sorrels' interest in the Property.

**6.** The record does not fully establish the extent of Mr. Bass's representation other than to show that he did represent the trustee in these matters and did not represent Janis Tech.

ed coverage insurance, however, in the event of a loss the insurance proceeds shall be applied to replacement/rebuilding/repairing, but neither the remainderman or term tenant is required to contribute additional funds for the purpose of rebuilding, replacing or repairing.

In her counsel's letter dated March 5, 2004, Sorrels indicated her agreement with attorney Bass's "position and proposal in Paragraph 5" of the February 20 letter. A letter dated June 16, 2004, from Sorrels' counsel purports to transmit an original of the Agreement signed by Sorrels, but no enclosure is included in the record. The letter states: "Enclosed is the signed original of the Agreement resolving the estate distribution. As we previously discussed, the agreement to resolve the estate does not effect [*sic*] any claim or right that may now exist as a result of the storm loss."

¶ 16 On the basis of this correspondence, Sorrels maintains that the "parties agreed that Janis Tech would provide adequate replacement value insurance on the subject property and that Plaintiff [Sorrels] would be the loss-payee on such policy." Sorrels also contends that Janis Tech "represented through counsel that an adequate policy of replacement insurance was in effect on the property with Plaintiff as the designated loss-payee." We have reviewed the record and find that it does not support these contentions.

¶ 17 First, material fact number 13 in Janis Tech's motion for summary judgment states she never represented to Sorrels that she obtained full coverage insurance. This stands unrefuted.

> In the statement, the adverse party or parties shall set forth and number each specific material fact which is claimed to be in controversy and reference shall be made to the pages and paragraphs or lines of the evidentiary materials. All material facts set forth in the statement of the movant which are supported by acceptable evidentiary material shall be deemed admitted for the purpose of summary judgment or summary disposition unless specifically controverted by the statement of the ad-

verse party which is supported by acceptable evidentiary material.

Okla. Dist. Ct. R. 13(b), 12 O.S. Supp.2009, ch. 2, app. There is no reference to material fact number 13 in Sorrels' summary judgment response, and Tech supported this statement with "acceptable evidentiary material" as required by Rule 13(b). Further, the depositions of Sorrels and her husband Mark Sorrels confirm that Janis Tech never made any representations to them regarding insurance. Those depositions also confirm the assertion in attorney Bass's affidavit that he did not represent Janis Tech during these proceedings.

¶ 18 Second, attorney Bass's February 20 letter does not provide any basis from which to conclude that the "parties agreed that Janis Tech would provide adequate replacement value insurance." It is clear that letter was intended to summarize Bass's understanding of general Oklahoma law. The deposition of Mark Sorrels confirms that he understood the letter to be nothing more than that.

> Q And with respect to Jim Bass' [*sic*] statement, he was telling you what he thought the law in Oklahoma was; right?
> A Right.

And, as previously discussed, in the absence of an agreement to the contrary, general Oklahoma law may have required Janis Tech to pay the ad valorem taxes on the Property, but the Trust instrument specifically allocated that responsibility to Sorrels. More importantly, without any authority to represent Janis Tech, Bass could not agree to obligate her to provide insurance on the Property. As a result, there is nothing in this record to contradict the terms of the quit claim deed, as incorporated into the Agreement, requiring Sorrels to insure her interest in the property.

¶ 19 Likewise, Sorrels' contention that she preserved some claim for storm loss despite signing the Agreement must fail, at least as to Janis Tech. Assuming Sorrels signed the Agreement after the storm damage to the Property occurred, she was in a position to provide for the distribution of insurance proceeds in that Agreement. She did not. The Agreement memorializes Sorrels' agreement

"with respect to distribution of assets of the Fred Tech Trust and termination (winding up of the affairs) of said Trust." "When a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible, subject, however, to the other provisions of this article." 15 O.S. 2001 § 155. Sorrels does not point to any other provision of Title 15 that would preserve any claim against Janis Tech not contained in the Agreement. Further, even if the letter of Sorrels' counsel, dated June 16, 2004, reserves some claim for storm loss, that letter is not addressed to Janis Tech, the letter does not reflect that a copy was sent to Janis Tech, and there is nothing in the record to show that Janis Tech agreed to any reservation of claims against her not stated in the terms of the Agreement.

## CONCLUSION

¶ 20 Sorrels derived from the Trust a remainder interest in the Property subject to Janis Tech's life estate, and had a vested and insurable interest in the Property. Pursuant to the parties' Agreement and attached quit claim deed, Sorrels was responsible for insuring her interest in the Property. There is no record support for Sorrels' contention that Janis Tech would provide replacement value insurance on the Property, name her as loss-payee, or agreed to a reservation of claim for storm loss. We affirm the district court's order granting summary judgment to Janis Tech.

**AFFIRMED.**

BARNES, P.J., and WISEMAN, J., concur.